Gerry Hector MEGHOO, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

and

Commonwealth of Kentucky, Appellant/Cross–Appellee,

v.

Gerry Hector Meghoo, Appellee/Cross–Appellant.

Nos. 2004–SC–001042–DG, 2005–SC–000683–DG.

Supreme Court of Kentucky.

Feb. 21, 2008.

Frank Mascagni III, Louisville, KY, Counsel for Meghoo.

Jack Conway, Attorney General of Kentucky, Perry T. Ryan, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Commonwealth.

Opinion of the Court by Chief Justice LAMBERT.

Appellant Gerry Hector Meghoo was convicted of trafficking in marijuana in an amount greater than five pounds pursuant to a conditional guilty plea.[1] With his plea he reserved the right to challenge the trial court's denial of his motion to suppress evidence on the grounds that vehicle enforcement officers (VEOs) improperly seized and searched his vehicle, and arrested him without authorization to do so.

On July 27, 2000, Officer Shannon Chelf of the Kentucky Department of Transportation's Division of Vehicle Enforcement conducted a safety inspection of Appellant's truck at a weigh station in Hardin County. Appellant had come from Houston and was headed for New Jersey. Incident to safety inspections, the officers look at the documents concerning the vehicle, the load, the driver, and how long the driver has been working. They also check the equipment, and sometimes include a physical examination of mechanical items. While inspecting Appellant's paperwork, Officer Chelf noted that the pages in Appellant's logbook were misdated, contrary to vehicle regulations. He reviewed Appellant's bills of lading and saw that they were handwritten, an unusual circumstance in that bills of lading nowadays are generally computer generated. Officer Chelf testified that he found this "suspicious." After examining the paperwork and speaking with Appellant, Officer Chelf allowed time to try to correct the logbook. After Appellant did so, Officer Chelf said the dates still did not match up, and the

changes actually made matters worse in that there were major discrepancies as to when Appellant had been driving.

In the midst of this examination, Officer Chelf called for Officer Steve Burke, another vehicle enforcement officer in a canine unit. When Burke arrived, Officer Chelf told Appellant that the dog was going to be taken around the exterior of the vehicle. Officer Chelf testified that Appellant's voice began to "crackle" and his knees "got weak" and the officer thought he might collapse. Officer Burke walked around the vehicle with the dog. Officer Burke testified at the suppression hearing that the canine made a positive response for "narcotic odor" at the trailer doors.

The rear doors were sealed and padlocked. The seal was broken by the officers. Officer Chelf asked Appellant for the key to the padlock and Appellant gave it to him. Officers opened the doors, and saw boxes inside on the floor of the trailer instead of on pallets. Upon being placed in the trailer, the dog went toward the boxes and immediately began biting and scratching upon one of them. Officer Chelf testified that this is a trained response of the canines. The dog ripped the box open before the officers could remove him. They immediately detected a strong smell of fabric softener sheets. Officer Chelf testified that those are commonly used to mask the odor of large quantities of narcotics.

Officer Chelf arrested Appellant and had him placed in handcuffs. Officer Chelf then cut into one of the shrink-wrapped bales in the box and saw what looked like marijuana. After removing the canine, the officers secured the scene, and called their supervisors to take control of the evidence. The officers from the Division of Vehicle

1. RCr 8.09.

Enforcement removed the vehicle to another location for a search of the interior of the truck. Marijuana was found only in the single box the dog had alerted them to. It contained over 40 pounds of marijuana. Officer Chelf later obtained Appellant's consent to search his truck, but according to VEO records consent was given at 9:05 p.m., which the Commonwealth concedes was after the truck had been removed and the search performed.

Appellant was indicted by the Hardin County Grand Jury for one felony count of trafficking in marijuana, five pounds or more, and for violations pursuant to KRS 281.600 for improperly maintained hours of service records and for possession of marijuana in a motor vehicle. Just prior to a jury trial, a suppression hearing was held on issues related to the search of the vehicle, voluntariness of consent, and the authority of the motor vehicle officers to search and to arrest. The trial court concluded that the vehicle enforcement officers had the right to stop the vehicle for a safety inspection since motor vehicle carriers are a heavily regulated industry. The court ruled that it was not clear that Appellant gave consent to search by handing the key to the padlock to the officer.

The trial court concluded that the officers had grounds to conduct a warrantless search once the dog alerted them to the presence of drugs outside the truck. The court also concluded that since trafficking was not an offense relating to motor vehicles it was not clear that the vehicle enforcement officers had authority to arrest. However, holding that a citizen can make a citizen's arrest where a felony has been committed, and this certainly includes vehicle enforcement officers who have discovered 40 pounds of marijuana during a vehicle inspection, the trial court denied the motion to suppress. As a result, Appellant decided to enter a conditional guilty plea to the charge of trafficking in marijuana, which enabled him to appeal the suppression issue.

On appeal, the Court of Appeals affirmed the trial court's determination generally that the stop and seizure of Appellant's truck was properly performed by the vehicle enforcement officers. This Court granted discretionary review to resolve questions as to the permissible scope of safety inspections by vehicle enforcement officers, and the authority of those officers to investigate and arrest for offenses that are not within the immediate scope of motor vehicle carrier safety statutes and regulations. The Commonwealth cross-appealed with the argument that the Court of Appeals failed to recognize that vehicle enforcement officers have the authority to arrest following investigations of drug trafficking involving motor vehicle carriers. The Commonwealth insists that there is no need to rely on citizen's arrest authority.

Appellant argues first that the vehicle enforcement officers did not have authority to expand an appropriate safety inspection into a full-fledged drug trafficking inquiry. Appellant maintains that as the statutory authority for vehicle enforcement officers under KRS 281.765 extends only to motor vehicle offenses, the vehicle enforcement officers had no authority to conduct the canine sniff test, and certainly no authority to search his vehicle or arrest him.

■ KRS 281.765 provides that vehicle enforcement officers, who are considered "special officers" under the statute,[2] are to enforce the provisions of Chapter 281 relating to motor carriers, and enforce "any other law relating to motor vehicles" without a warrant if the offense is committed

**2.** *Howard v. Transportation Cabinet,* 878 S.W.2d 14, 16–17 (Ky.1994).

in the officer's presence and with warrant or summons if it is not committed in the officer's presence. While the trial court concluded that trafficking was not an offense relating to motor vehicles, the Court of Appeals concluded that because Appellant was also charged with possession of drugs inside a commercial vehicle, a violation of a federal regulation[3] adopted under state law[4], the offense with which Appellant was charged was related to motor vehicles.

Appellant challenges that conclusion in this Court on the basis that the federal regulation cited does not prohibit drug trafficking, but relates to driver and vehicle safety. The regulation forbids a driver to be on duty and to possess, be under the influence of, or use Schedule I substances, amphetamines, narcotics or any other substance which renders a driver incapable of safely operating a motor vehicle.[5] It also states that, as used in the regulation, "possession" does not include possession of a substance which is manifested and transported as part of a shipment.[6] Appellant argues that the regulation is about "sobriety, not cargo," and a sober driver can thus transport illegal substances without violating the regulation. The regulation clearly does deal with driver safety rather than transportation of contraband, and to that extent we differ with the Court of Appeals' conclusion that this regulation establishes that this was an offense involving motor vehicles under the law of Kentucky.

The fact that a motor vehicle may be involved is not an element of trafficking under the penal code definition. Never-

theless, the vehicle enforcement officers were justified in acting as they did since this encounter did not begin as a search for drugs but as part of a safety investigation. Appellant does not challenge the propriety of the officers' inspection of his logbook and bills of lading, and he agrees that the officers were authorized to investigate them. Yet Appellant maintains that once the vehicle enforcement officers detected suspicious errors and discrepancies in the logbooks and bills of lading, all they were empowered to do was issue a citation for the traffic violations.

Under KRS 281.765, vehicle enforcement officers are empowered to do more than merely note the driver's failure to follow the law. When confronted with violations of law concerning the bills of lading and logbooks, officers may continue to investigate why those records are not in compliance with the laws vehicle enforcement officers are charged with enforcing.

▪▪▪ Once the vehicle enforcement officers established a reasonable suspicion based on the documents that other violations of law might be occurring, they were entitled to bring in the drug-sniffing dog for the exterior of the vehicle so long as there was not any unreasonable delay.[7] The officers were entitled to conduct an investigation "reasonably related in scope to the circumstances that justified the interference in the first place."[8]

[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative

---

3. 39 C.F.R. § 392.4.

4. KRS 281.600, which provides that federal motor vehicle carrier safety regulations may be adopted. Those regulations were adopted in 601 KAR 1:005, Section 2.

5. 49 C.F.R. § 392.4(a).

6. 49 C.F.R. § 392.4(d).

7. *Illinois v. Caballes,* 543 U.S. 405, 407, 125 S.Ct. 834, 837, 160 L.Ed.2d 842 (2005).

8. *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir.1994).

methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.[9]

In this case, based on the reasons for the inspection and what the officers found, continuing the investigation into what Appellant was carrying was reasonable in scope.

We have further examined the record for unreasonable delay. The vehicle enforcement safety inspection report shows that Appellant's inspection began at 7:20 p.m. and ended at 7:47 p.m. The search of the vehicle with the drug dog Was recorded, and it appears that the videotaping begins at 8:08:50 p.m. and Appellant was arrested about seven minutes later. Thus, the officers' involvement in inspecting and investigating these circumstances apparently lasted about an hour. Moreover, given the discrepancies in the logbooks, the vehicle enforcement officers were authorized to declare the vehicle "out of service" and Appellant unable to drive it for 24 hours.[10] Officer Chelf testified that Appellant, pursuant to this regulation, would not have been permitted to leave in his truck. This mitigates any claim of unreasonableness as to the length of the detention, since this is not a case in which Appellant could have driven away but for the officers' actions.

■ We find no limitations in KRS 218A.765 to prevent the vehicle enforcement officers from employing drug-sniffing dogs for the exterior of commercial vehicles. Our only concern is whether the drug dog was used to sniff the vehicle while Appellant was lawfully detained. And, we conclude that the officers were still conducting a warranted investigation within a reasonable time. Probable cause was properly based on the dog's alert because an exterior canine sniff does not constitute a search for Fourth Amendment purposes.[11] The trailer was not entered until the dog had alerted on the exterior of the truck, giving the officers probable cause to conduct a warrantless search.[12]

The Court of Appeals found that the vehicle enforcement officers had the authority to arrest for the drug offense since a private person could have. We believe it unnecessary to resort to such a construction in order to validate the arrest in this circumstance. Rather we rely on KRS 281.765 as follows:

> Any peace officer, *including* sheriffs and their deputies, constables and their deputies, police officers and marshals of cities or incorporated towns, county police or patrols, *and special officers appointed by any agency of the Commonwealth of Kentucky for the enforcement of its laws relating to motor vehicles and boats* or boating, now existing or hereafter enacted, shall be authorized and it is hereby made the duty of each of them to enforce the provisions of this chapter[.]

Vehicle enforcement officers are special officers appointed by the Department of Transportation and, as the above statute

**9.** *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229, 238 (1983) (citations omitted).

**10.** KRS 281.600, 601 KAR 1:005, adopting 49 C.F.R. § 395.13

**11.** *United States v. Holloman,* 113 F.3d 192 (11th Cir.1997).

**12.** *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."); *California v. Carney,* 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) ("Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception.")

shows, are considered "peace officers" in this Commonwealth. KRS 431.005(1)(c) provides that a peace officer may make an arrest without a warrant when he has probable cause to believe that the person being arrested has committed a felony.[13] Once the vehicle enforcement officers had probable cause from the dog's alert that Appellant had committed a felony offense, they were not required to look away just because their normal purview consists of traffic violations. We discover no limitations on the vehicle enforcement officers' jurisdiction in KRS 281.765 limiting their authority to *arrest* when they have probable cause under KRS 431.005(1)(c). Under KRS 431.005(1)(c) the arrest was proper, and the courts below are affirmed.

LAMBERT, C.J., and ABRAMSON, CUNNINGHAM, NOBLE, and SCOTT, JJ., and Special Justices JAMES D. HARRIS, JR., and THOMAS C. SMITH, concur. MINTON and SCHRODER, JJ., not sitting.

---

**13.** KRS 431.005 limits the definition of peace officers who may arrest in some instances (domestic violence incidents and for Kentucky Sex Offender Registry violations) to those certified pursuant to KRS 15.380, which does not include vehicle enforcement officers, but there is no such limitation on who is a peace officer for KRS 431.005(1). *See Adams v. Commonwealth,* 931 S.W.2d 465 (Ky.App. 1996).