RENDERED: AUGUST 27, 2009
TO BE PUBLISHED

Supreme Court of Kentucky

2007-SC-000312-DG

JIMMY L. EPPS                                                    APPELLANT


                  ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2006-CA-000159-MR
            MONTGOMERY CIRCUIT COURT NO. 05-CR-00086


COMMONWEALTH OF KENTUCKY                              APPELLEE


              **OPINION OF THE COURT BY JUSTICE NOBLE**

              <u>**REVERSING, VACATING, AND REMANDING**</u>


Appellant Jimmy Epps appeals a Court of Appeals decision approving an extended traffic stop for a minor traffic offense during which a narcotics-detection dog was brought in and used to search the vehicle in which Epps was traveling. Because the traffic stop was unreasonably prolonged, it violated the Fourth Amendment, and the decision of the Court of Appeals is reversed.

## I. Background

On May 15, 2005, Officer Chris Burgess saw a white Oldsmobile Cutlass make an improper turn, and as he followed the vehicle, he noticed it did not have an illuminated license plate. He initiated a traffic stop and the car pulled over. The vehicle contained four occupants; two in the front (Greg Kelly, who was the driver, and Kelly's son, who was the front passenger), and two in the rear bench seat (the Appellant was sitting behind the driver and Kenny

Cunningham was sitting behind the front passenger). Kelly was unable to produce proof of insurance or registration, and the vehicle came back as being registered to a used car lot.

Officer Burgess testified that he recognized Cunningham because his partner had previously arrested him for drug-related activity, and he thought Cunningham appeared impaired. He requested consent to search the car, but Kelly refused. Officer Burgess then contacted Officer Shannon Taylor to bring a specially trained narcotics-detection dog to the scene. They arrived fifteen minutes later, while Officer Burgess was in the process of issuing Kelly's citation. Based on Kelly's lack of insurance and registration, Officer Burgess decided to tow the vehicle.[1]

Officer Taylor had the occupants get out of the vehicle. He separated and patted each of them down for weapons, finding none. Officer Taylor then conducted a dog sniff of the exterior of the vehicle. The dog "alerted" on all four doors, which indicated that drugs were present in the vehicle. He then had the dog sniff the car's interior, and it alerted on the front passenger seat headrest, where a crack-cocaine pipe was recovered. Cunningham, who had been sitting behind the pipe-containing headrest, was arrested for possession of drug paraphernalia.

The dog also alerted on the back driver's-side seat (where the Appellant had been sitting), but no other drugs were recovered from the vehicle. Officer

---

[1] The parties have not cited the authority for towing a vehicle based on the failure to produce insurance. This Court has likewise been unable to find such authority, given that the driver was not arrested for any offenses.

Taylor patted down the Appellant a second time, and when he indicated he had found something, the Appellant admitted he was in possession of cocaine. He shook his legs and two baggies containing crack-cocaine fell from his groin area and out of his pants legs to the ground, and he was arrested. Approximately 90 minutes elapsed from the initial stop of the vehicle until the Appellant's arrest.

At the police station, the Appellant waived his Miranda rights and gave a statement to police in which he said he was in town from Dayton, Ohio, to sell cocaine. He was indicted for first-degree trafficking in a controlled substance.

The Appellant filed a motion to suppress the drug evidence seized from his person. The trial court denied the motion, and the Appellant entered a conditional guilty plea, reserving the right to appeal the trial court's ruling on his motion to suppress. RCr 8.09. The trial court accepted the Appellant's conditional guilty plea and sentenced him to seven years' imprisonment. The Court of Appeals affirmed the trial court's ruling, and this Court granted discretionary review.

## II. Analysis

### A. Standard of Review On Suppression Issues

In reviewing a trial court's ruling on a motion to suppress evidence, the reviewing court must first determine whether the trial court's findings of fact are supported by substantial evidence. If so, those findings are conclusive. The reviewing court then must conduct a de novo review of the trial court's application of the law to those facts. Ornelas v. United States, 517 U.S. 690,

697 (1996); United States v. Martin, 289 F.3d 392, 396 (6th Cir. 2002); Adcock v. Commonwealth, 967 S.W.2d 6, 8 (Ky. 1998).

The parties do not dispute the factual findings of the trial court in this case and they were supported by substantial evidence; therefore they are conclusive. RCr 9.78. However, this Court will conduct a de novo review of the application of the law to those facts.

## B. Seizure of Passengers during a Traffic Stop

The first question this Court must address is whether the Appellant, as a passenger in the car, was seized and thus could properly challenge his detention under the Fourth Amendment. The proper inquiry is to ask "whether a reasonable person in [the passenger's] position when the car stopped would have believed himself free to 'terminate the encounter' between the police and himself." Brendlin v. California, 127 S.Ct. 2400, 2406 (2007) (quoting Florida v. Bostick, 501 U.S. 429, 436 (1991)). As in Brendlin, in this case "any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission." Id. at 2406-07. This makes sense, because "even when the wrongdoing is only bad driving, the passenger will expect to be subject to some scrutiny, and his attempt to leave the scene would be so obviously likely to prompt an objection from the officer that no passenger would feel free to leave in the first place." Id. at 2407.

"'If either the stopping of the car, the length of the passenger's detention thereafter, or the passenger's removal from it are unreasonable in a Fourth

4

Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit.'" Id. at 2408 (quoting 6 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.3(e), at 194-95 (4th ed. 2004 and Supp. 2007)). The Appellant "was seized from the moment [the driver's] car came to a halt on the side of the road," id. at 2410, and he therefore has standing to challenge the stop as an alleged violation of the Fourth Amendment. See also Commonwealth v. Morgan, 248 S.W.3d 538, 540 n.1 (Ky. 2008) ("As a preliminary matter, we note that even though Morgan was only a passenger in the car, she nonetheless has standing to challenge the legality of the initial stop of the vehicle.").

## C. Narcotics-Detection Dog Sniffs

The parties concede that Officer Burgess lawfully stopped the vehicle in this case for a traffic violation, and they also concede that the officers could subject the vehicle to a dog sniff by a narcotics-detection dog. "[A] canine sniff by a well-trained narcotics-detection dog [is treated as] 'sui generis' because it 'discloses only the presence or absence of narcotics, a contraband item.'" Illinois v. Caballes, 543 U.S. 405, 409 (2005) (quoting United States v. Place, 462 U.S. 696, 707 (1983)). "[T]he use of a well-trained narcotics-detection dog—one that 'does not expose non-contraband items that otherwise would remain hidden from public view'—during a law traffic stop, generally does not implicate legitimate privacy interests." Id. (quoting Place, 462 U.S. at 707). "A dog sniff conducted during a concededly lawful traffic stop that reveals no

information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Id. at 410.

### D. Unreasonably Prolonged Traffic Stops

That dog sniffs are not per se unconstitutional, however, does not end the inquiry in this case. Though dog sniffs are not considered searches that would implicate the Appellant's Fourth Amendment rights, because he was detained (that is, seized), his claim can still succeed if he can show that the detention itself was otherwise unreasonable.

In Caballes, the United States Supreme Court addressed a situation factually similarly to this case. While one officer was writing a warning ticket, another officer walked the narcotics-detection dog around the car. The dog alerted at the trunk, the officers searched it and found marijuana, and they arrested the respondent. The entire incident lasted less than ten minutes, and the Court "accept[ed] the state court's conclusion that the duration of the stop in th[at] case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop." Caballes, 543 U.S. at 408.

Despite its conclusion that in general a dog sniff is a permissible search, however, the Court noted that "[i]t is nevertheless clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." Id. at 407. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Id. In such a case, the

subsequent discovery of contraband is the product of an unconstitutional seizure. Id. at 408.

The Court of Appeals adhered to Caballes and addressed the issue of unreasonable delay during a traffic stop in Johnson v. Commonwealth, 179 S.W.3d 882 (Ky. App. 2005). The facts in Johnson were also similar to those in this case, except that in Johnson, the narcotics-detection dog arrived and Johnson was asked to step out of his car within five to seven minutes of the initial traffic stop, and the entire detention took only fifteen minutes. As in this case, the defendant objected "to the scope and duration of the detention that allowed for the dog sniff." Id. at 885. But the court rejected that argument, agreeing instead with the trial court's conclusion "that the brief period of detention lasted no longer than was necessary to achieve the purpose of the stop." Id. The court approved the principle that an "'investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" Id. at 884 (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)). Consistent with Caballes, the court explained:

> We have examined the record and find nothing to indicate that the duration of Johnson's detention was so prolonged as to be unjustified. Officer Roush appears to have pursued his investigation in a diligent and reasonable manner. He made a radio transmission to dispatch, awaited information, then contacted the canine unit. His encounter with Johnson was focused and immediate, and he set out directly to complete the paperwork involved in issuing a citation. The purpose of the initial stop had not been completed before the canine unit arrived at the scene, and the dog sniff did not prolong the stop to any unreasonable extent. The dog sniff occurred while Johnson was being lawfully detained by Roush. After the dog alerted to the presence of narcotics, the officers undoubtedly had probable cause to search the vehicle. Consequently, the trial court did not err by

7

denying Johnson's motion to suppress the evidence recovered from his car.

Id. at 885-86. The court simply held that under the facts of that case, the length of the stop was not unreasonably prolonged. Though this Court is not bound by the decision of the Court of Appeals in Johnson, the case is instructive and is an accurate analysis of the law as announced in Caballes.

In contrast to Johnson, however, the uncontested testimony from the suppression hearing in this case shows that the delay was far longer. Here, fifteen minutes elapsed from the initial stop until the drug dog arrived. Officer Burgess testified that it then took thirty to forty minutes to complete the dog sniff. He also testified that he was working on Kelly's citation while he waited for the drug dog to arrive. However, the citation was not given to Kelly until after the dog arrived and searched the exterior and interior of the vehicle, nearly an hour after the initial stop. The second pat down of the Appellant did not take place until after the completed dog sniff. The entire incident from the initial stop until the arrest of the Appellant took 90 minutes.

In Meghoo v. Commonwealth, 245 S.W.3d 752 (Ky. 2008), this Court addressed the issue of unreasonable delay during a safety inspection at a weigh station. A safety inspection of Meghoo's truck and paperwork at a weigh station revealed that his logbook was misdated and his bills of lading were suspiciously handwritten, since "bills of lading nowadays are generally computer generated." Id. at 753. The vehicle enforcement officer gave Meghoo a chance to correct his logbook, and the proffered corrections actually resulted in further discrepancies. As the officer continued to investigate the

8

discrepancies, he called for a canine unit. The dog alerted at the trailer doors and then started to tear open a box within the trailer. The box contained approximately forty pounds of marijuana covered in fabric softener sheets to mask the odor. "Once the vehicle enforcement officers established a reasonable suspicion based on the documents that other violations of law might be occurring, they were entitled to bring in the drug-sniffing dog for the exterior of the vehicle so long as there was not any unreasonable delay." Id. at 755 (citing Caballes, 543 U.S. at 407). "The officers were entitled to conduct an investigation 'reasonably related in scope to the circumstances that justified the interference in the first place.'" Id. (quoting United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994)). This Court first found that "based on the reasons for the inspections and what the officers found, continuing the investigation into what the Appellant was carrying was reasonable in scope." Id. at 756.

As for the issue of unreasonable delay, the record showed that the safety inspection took nearly thirty minutes, the search of the vehicle with the dog began about twenty minutes after the safety inspection ended, and Meghoo was arrested about seven minutes after the search of the vehicle with the drug dog began. The officers' inspection and investigation thus lasted about an hour. However, "given the discrepancies in the logbooks, the vehicle enforcement officers were authorized to declare the vehicle 'out of service' and Appellant unable to drive it for 24 hours." Id. at 756 (citing KRS 281.600; 601 KAR 1:005). Pursuant to that regulation, Meghoo would not have been allowed to

9

leave in his truck. This Court concluded that such a regulation "mitigates any claim of unreasonableness as to the length of the detention, since this is not a case in which Appellant could have driven away but for the officers' actions." Id.

Also, Meghoo involved a regulatory safety inspection at a weigh station, not a traffic stop on the side of the road. The heavier regulation of the commercial trucking industry is part of the reason the officers in Meghoo were authorized to effectively impound the truck for twenty-four hours. Such a regulatory scheme, and voluntary participation in the regulated industry, tends to weigh heavily in favor of finding longer stops to be reasonable. Traffic stops of private passenger vehicles, which are entitled to a greater expectation of privacy to begin with, should almost always be shorter because they involve minor traffic violations, and do not fall under a broad regulatory scheme requiring an inspection (with which commercial drivers must comply in addition to those general traffic laws that private drivers must follow).

Finally, the delay was shorter in Meghoo. Though it was about the same length of time before the drug dog arrived, the entire encounter with the officers in Meghoo lasted about an hour (including thirty minutes for the safety inspection), much of which was due to the fact that the truck had failed the safety inspection. In the present case, however, it was an hour before the second pat down and arrest of the Appellant, and the entire encounter with officers lasted about 90 minutes. The stop of a private passenger vehicle for a minor traffic offense, without more, cannot reasonably take longer than the

10

regulatory stop of a commercial truck. That the stop in this case actually exceeded that in <u>Meghoo</u> illustrates why the stop in this case was unreasonable.

Given that the length of the delay in <u>Meghoo</u> was shorter and involved a failed safety inspection at a weigh station causing the vehicle to be declared "out of service," as opposed to a routine traffic stop, <u>Meghoo</u> is not controlling. Even though <u>Meghoo</u> was a relatively lengthy delay, this Court's conclusion that it was not an unreasonable delay in that case does not compel the same result in this case.

As previously noted, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." <u>Caballes</u>, 543 U.S. at 407. Contrary to the situation in <u>Caballes</u>, this Court cannot "accept the . . . conclusion that the duration of the stop in this case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop." <u>Id.</u> at 408. Instead, this is an example of the scenario foreseen in <u>Caballes</u>, that a seizure "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." <u>Id.</u> at 407.

Simply put, the scope and duration of the stop in this case—fifteen minutes before the narcotics-detection dog arrived, thirty to forty more minutes for the dog to search the car, one hour before the driver was given a citation, and 90 minutes of total detention before the Appellant-passenger was arrested—exceeded that allowed for a mere traffic offense. The stop, therefore,

11

was unreasonable and "so prolonged as to be unjustified." Johnson, 179 S.W.3d at 884. Despite the Commonwealth's contention, the choice to tow the vehicle did not lengthen the permissible duration of the detention because regardless of how much time it might take for a tow truck to arrive, the actual seizure and search had to be completed within a reasonable time. The Commonwealth's arguments regarding de minimis intrusions on Fourth Amendment protections and inevitable discovery are without merit. As such, the subsequent discovery of crack-cocaine on the Appellant was the product of an unconstitutional seizure, and the evidence should have been suppressed.

## III. Conclusion

Because the officers unreasonably prolonged the duration of the stop of the vehicle in this case by detaining the Appellant for 90 minutes, the seizure became unlawful. Since the evidence recovered from the Appellant was the product of an unconstitutional seizure, it should have been suppressed.

For the foregoing reasons, the Court of Appeals is reversed, Appellant's conditional guilty plea and the judgment of the Montgomery Circuit Court are vacated, and the case is remanded to the Montgomery Circuit Court for further action consistent with this Opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Appeals Branch Manager
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, Kentucky  40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Bryan Darwin Morrow
Office of Attorney General
1024 Capital Center Drive
Frankfort, Kentucky  40601