**Timothy S. WARD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–CA–000732–MR.

Court of Appeals of Kentucky.

July 29, 2011.

Linda Roberts Horsman, Assistant Public Advocate, Dept. of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Christian K.R. Miller, Assistant Attorney General, Frankfort, KY, for appellee.

Before DIXON, LAMBERT, and VANMETER, Judges.

*OPINION*

LAMBERT, Judge:

Timothy Ward entered a conditional guilty plea to possession of a controlled substance in the first degree and being a persistent felony offender in the second degree after his motion to suppress was denied by the Muhlenberg Circuit Court. After careful review, we affirm the denial of the motion to suppress and Ward's subsequent judgment and sentence.

On January 10, 2010, at 11:17 p.m., Officer Jeremy Mahan of the Muhlenberg County Sheriff's Department was on patrol. Officer Mahan witnessed a vehicle make a right turn without stopping at a stop sign. Officer Mahan followed the vehicle, ran the license plate, and initiated a traffic stop of the vehicle. While running the plate and prior to the stop, Officer

Mahan noticed the vehicle was occupied by two males, one of whom kept turning back and looking nervously at Officer Mahan. After stopping the vehicle, Officer Mahan approached the car and recognized both the occupants as persons with known drug violations-the appellant, Ward, who was driving, and Kevin Garner, the passenger. Both occupants were nervous and irritable.

Officer Mahan requested identification from the two individuals. Garner gave the officer his driver's license, but Ward only provided his social security number, as he did not have his license on his person. Before returning to his patrol car, Officer Mahan stated he was going to check for outstanding warrants and directed Ward to keep his hands on the steering wheel and Garner to keep his hands on the dash board.

It took Officer Mahan approximately five to ten minutes to run the identification check due to the fact that Ward had given him only a social security number and did not have a license. While running the identification check, Officer Mahan noticed Ward was not complying with the directive to keep his hands on the steering wheel. After Officer Mahan learned that no warrants were outstanding, he returned to the vehicle. About eight to ten minutes had transpired between the initial stop and Officer Mahan returning to the vehicle. He had not yet written a citation, and he testified that a complete traffic stop including writing a citation would take approximately fifteen to twenty minutes.

Upon returning to the vehicle, Officer Mahan returned Garner's driver's license and asked the two men if there were any illegal narcotics in the vehicle. Both replied, "No." Officer Mahan then asked Ward for permission to search the vehicle. Ward informed him that he did not own the vehicle and did not know what was in it. Officer Mahan explained to Ward that he could give consent to search because he was in control of the vehicle, but Ward did not give permission to search. Officer Mahan then asked Ward how long he had been in possession of the vehicle, and Ward stated that he had possessed the vehicle for the past ten to eleven hours. Officer Mahan then asked a final time if he could have consent to search the interior of the vehicle, and Ward stated, "No."

The totality of the circumstances led Officer Mahan to believe drugs were in the vehicle. First, the officer knew both individuals to have a history with narcotics. Second, both were acting nervous. Third, both were acting irritably. Fourth, the men were stuttering while talking to Officer Mahan. Fifth, both men were being evasive in avoiding a search. Sixth, Ward was moving around inside the vehicle after being told to keep his hands on the steering wheel. And finally, based on his experience and training, the men's actions were consistent with attempting to hide or conceal illegal substances.

Officer Mahan had a canine unit in his car, so he directed the men to roll up their windows and turn off the car engine while he had the dog walk around the vehicle. The dog alerted three times on the passenger side door. Officer Mahan directed the men to exit the vehicle, at which point he searched the vehicle and discovered a quarter-baggie full of methamphetamine concealed inside a pack of Marlboro Red cigarettes. Approximately fifteen minutes elapsed from the time the officer retrieved the canine unit from the back of his cruiser until the dog alerted three times on the car. In total, including the officer's search of the vehicle, it took approximately fifteen to twenty minutes from the time the canine unit began to sniff the vehicle until Officer Mahan discovered the methamphetamine.

Officer Mahan then read both men their *Miranda* rights and placed them under arrest at 11:50 p.m., which was thirty-three minutes after the initial stop. After being placed in separate patrol cars, Ward knocked on the police cruiser window and volunteered that the methamphetamine was his and not Garner's and pleaded for Garner not to go to jail.

Ward was arraigned and entered a plea of not guilty. He then filed a motion to suppress the drugs found in his automobile. A hearing on that motion was held on March 15, 2010, at which the Commonwealth introduced the above testimony of the arresting officer. Ward offered no evidence. The trial court denied Ward's motion to suppress, and Ward then agreed to a conditional guilty plea to amended counts of first-degree possession of a controlled substance (methamphetamine) and second-degree persistent felony offender, with a recommended five-year sentence enhanced to eight years.

On April 5, 2010, the trial court entered its final judgment and sentence against Ward, sentencing him to the recommended eight-year imprisonment sentence. Ward timely filed a notice of appeal, and this appeal now follows.

On appeal, Ward argues that the duration of the traffic stop was unreasonably extended by the canine search and therefore that the evidence obtained after the dog sniff of the vehicle should have been suppressed.

■ When reviewing a trial court's decision on a motion to suppress, this Court accepts the trial court's findings of fact if they are supported by substantial evidence. *Peyton v. Commonwealth*, 253 S.W.3d 504, 514–15 (Ky.2008). Substantial evidence is evidence that "when taken alone or in light of all the evidence . . . has sufficient probative value to induce conviction in the minds of reasonable men."

*Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972). After determining the facts, this Court reviews the trial court's legal conclusions *de novo*. *King v. Commonwealth*, 142 S.W.3d 645, 649 (Ky.2004).

In the instant case, Ward makes no argument that the trial court's findings of fact are not supported by substantial evidence. Ward's statement of the case in his brief, the trial court's findings of fact, and the testimony solicited at the suppression hearing are substantially similar. Therefore, the trial court's findings are conclusive for this review. We now turn to a *de novo* review of the trial court's conclusions of law.

■ We begin with the proposition of law that "an officer who has probable cause to believe a civil traffic violation has occurred may stop a vehicle . . . ." *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001). Here Officer Mahan witnessed Ward commit a traffic violation: making a turn without stopping at a stop sign. *See* Kentucky Revised Statutes (KRS) 189.330(4); KRS 189.990. Thus, Officer Mahan had probable cause to stop Ward. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

■ Because Ward's vehicle was lawfully stopped, Officer Mahan could lawfully conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *Epps v. Commonwealth*, 295 S.W.3d 807, 812 (Ky.2009) (citing *Meghoo v. Commonwealth*, 245 S.W.3d 752 (Ky.2008)). In fact, Officer Mahan could ask the driver for his license and registration; request that the driver and passenger exit the vehicle; request that the occupants sit in the police cruiser; ask the driver about the purpose and destination of his travel; and run a computer check to determine whether there

were any outstanding warrants for the vehicle's occupants or whether the vehicle had been reported stolen. *See, e.g., Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Owens v. Commonwealth,* 291 S.W.3d 704, 708 (Ky.2009). The officer could even conduct a dog sniff of the exterior of the vehicle during the traffic stop, as "dog sniffs are not considered searches that would implicate an Appellant's Fourth Amendment rights," provided "the detention itself was otherwise [ ] reasonable." *Epps, supra,* at 810.

Ward argues that the duration of the traffic stop was unreasonably extended by the canine search. We disagree. Officer Mahan's investigation was timely and reasonably related to the scope of the traffic stop. He testified that a typical stop, including the issuance of a citation, takes approximately fifteen to twenty minutes. Here, only eight to ten minutes passed between the stop of the vehicle and officer Mahan having the canine unit sniff the automobile.[1] Officer Mahan had not yet written a citation and decided to perform a dog sniff of the car because Ward's and Garner's behavior and evasive answers led him to believe narcotics were in the vehicle. "A dog sniff conducted during a concedely lawful traffic stop that reveals no information other than the location of a substance that no individual has a right to possess does not violate the Fourth

Amendment." *Id.* at 810. In total, only twenty to twenty-five minutes elapsed from the time of the initial stop to the dog's alert on the vehicle's passenger door. This amount of time is not unreasonable, nor is it in violation of the Fourth Amendment.

To be sure, in *Epps,* the Kentucky Supreme Court found an unreasonable delay when ninety minutes elapsed between the stop and the arrest, of which fifteen elapsed before the dog sniff began, and another thirty to forty minutes elapsed before the dog alerted. *Id.* at 811. In the case at bar, only thirty-three minutes elapsed between the stop and the arrest. Eight to ten of those minutes elapsed before the dog sniff began, and another ten to fifteen minutes elapsed before the dog alerted three times. This delay was not unreasonable and did not warrant suppression of the drugs subsequently discovered and seized.

Accordingly, we affirm the judgment and sentence of the Muhlenberg Circuit Court.

ALL CONCUR.

---

1. This period of time would have been shorter had Ward produced a driver's license instead of giving Officer Mahan his social security number.