# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.



# Supreme Court of Kentucky

2016-SC-000302-MR

JOHNNY MARSHALL                                                    APPELLANT

V.

ON APPEAL FROM OWSLEY CIRCUIT COURT
HONORABLE MICHAEL DEAN, JUDGE
NO. 14-CR-0001

COMMONWEALTH OF KENTUCKY                                    APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART AND REVERSING IN PART AND REMANDING

A circuit court jury convicted Johnny Marshall of manufacturing methamphetamine, possession of drug paraphernalia, first-degree possession of controlled substance, and of being a second-degree persistent felony offender. The trial court sentenced Marshall to serve twenty-five years' imprisonment. Marshall appeals the resulting judgment as a matter of right.[1]

He contends the trial court erred by (1) denying his motion to suppress evidence collected by law enforcement in a warrantless search of the mobile home where he was located at the time of his arrest, (2) denying his motion for a directed verdict of acquittal, (3) improperly instructing the jury causing

---

[1] Ky. Const. § 110(2)(b).

resulting in double-jeopardy violations and (4) rendering judgment of conviction in violation of his right to a unanimous jury verdict.

Upon review of the record, we reverse the convictions for possession of a controlled substance and possession of drug paraphernalia and affirm the remaining convictions. Accordingly, we remand the case to the trial court for entry of a new judgment consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Three law enforcement officers attempting to serve an arrest warrant on Marshall found him at a mobile home. According to the Commonwealth, when Marshall–who was alone in the home at the time–answered the officers' knock at the door, one of the officers informed Marshall that they had a warrant for his arrest. Marshall stated that he needed to get his shoes and headed inside the trailer. As he did so, the officer grabbed Marshall and restrained him.

The arresting officer testified about what happened next. According to the officer, while seizing Marshall at the threshold of the mobile home, he saw what appeared to be an actively bubbling methamphetamine lab. When the officer asked him about it, Marshall denied any knowledge of it. But he consented to the officers' request to be allowed to look around, and when they did so, the arresting officer testified that they confirmed the presence of an actively working methamphetamine lab.

In contrast to the facts as later found by the trial court concerning the circumstances surrounding the search of the mobile home, Marshall asserts that he opened the door before the officers knocked and that he was already

2

wearing shoes when he answered the door. Most importantly for our discussion, he denies that he consented to a search of the mobile home.

## II. ANALYSIS.

### A. The Trial Court Properly Denied Marshall's Motion to Suppress.

We must conduct a twofold analysis when reviewing a trial court's decision on a motion to suppress. First, we must survey the factual findings made by the trial court; if those factual findings are supported by substantial evidence, then those findings are conclusive.[2] Next, we conduct a de novo review on the trial court's ruling on matters of law.[3]

Marshall filed a motion to suppress the evidence recovered during the search of the mobile home, and the trial court held a suppression hearing. Neither party disputes that the search was a warrantless search. And while government actors generally need a warrant to conduct a search of a residence like this mobile home, there are exceptions. Notably, the facts before us demonstrate the exception allowed for consent to the search.[4]

The trial court heard testimony from both the arresting officer and Marshall. The trial court heard the conflicting testimony and found the arresting officer's version more credible than Marshall's version, concluding that Marshall himself consented to the search. It is within the province of the

---

[2] *Epps v. Commonwealth*, 295 S.W.3d 807, 809 (Ky. 2009) (citations omitted).

[3] *Id.*

[4] *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky. 1992) (citing *Coolridge v. New Hampshire*, 403 U.S. 443, (1971)).

3

trial court to weigh the credibility of witnesses.[5] And the trial court here correctly concluded under the law that Marshall's oral consent was sufficient to waive the search-warrant requirement.[6] Having found that valid consent was given to search, the trial court properly applied the law and denied Marshall's suppression motion.

## B. The Trial Court Properly Denied Marshall's Directed Verdict Motion.

When deciding a directed-verdict motion, the trial court must take as true all evidence favoring the Commonwealth and determine whether the evidence is sufficient to induce a reasonable jury to believe beyond a reasonable doubt that the defendant is guilty.[7] In *Commonwealth v. Benham,* we stated, "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[8] In applying this standard, we reject Marshall's argument that he was improperly denied a directed verdict.

The crux of Marshall's argument on this issue is summarized in his brief, which reads, "...the trailer belonged to Johnny Marshall's brother who lived out of town and many people came and went from the trailer. Even if he knew someone was manufacturing methamphetamine at the trailer, it does not mean

---

[5] *See General Tire and Rubber Company v. Rule,* 479 S.W.2d 629 (Ky. 972).

[6] *See Payton v. Commonwealth,* 327 S.W.3d 468, 476 (Ky. 2010).

[7] *Pollini v. Commonwealth,* 172 S.W.3d 418, 429 (citing *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991)).

[8] *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991).

4

he was manufacturing methamphetamine. It is pure suspicion or conjecture that Johnny Marshall knew or assisted in the manufacturing of methamphetamine...."

As the Commonwealth responds, Marshall was the only person in the mobile home on the night the officers arrived, and he was arrested there where a working meth lab was found, components for manufacturing meth were located about the home, and meth residue was present. When the arresting officers spotted the meth lab, it was in a "rolling and bubbling state," and required a specialized meth lab unit to come to the scene for dismantling.

The argument advanced by Marshall that he should have been entitled to a directed verdict has no merit because there was ample evidence upon which a reasonable juror might rely to convict Marshall of the charge. So denial of the directed verdict motion was proper.

## C. Two Convictions Violated Marshall's Right to be Free from Double Jeopardy.

This alleged error is unpreserved, but we will review the asserted double-jeopardy violations under *Sherley v. Commonwealth*.[9] Marshall asserts that his convictions for manufacturing methamphetamine, possession of a controlled substance, and possession of drug paraphernalia violated his rights under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and Section 13 of the Kentucky Constitution. We agree.

---

[9] *Sherley v Commonwealth*, 558 S.W.2d 615, 618 (Ky. 1977) ("failure to preserve this issue for appellate review should not result in permitting a double jeopardy conviction to stand."), *overruled on other grounds by Dixon v. Commonwealth*, 263 S.W.3d 583 (Ky. 2008).

We addressed the double-jeopardy implications of potentially duplicitous jury instructions for manufacturing methamphetamine and possession of methamphetamine in *Beaty v. Commonwealth.*[10] In *Beaty,* the defendant was manufacturing methamphetamine in the trunk of his car.[11] The jury convicted him of both manufacturing methamphetamine and possession of a controlled substance, methamphetamine, but it was impossible to determine from the trial record which methamphetamine he was guilty of possessing. While exploring the alleged double-jeopardy implications of these convictions the Court said, "[the defendant] was properly convicted of both possessing methamphetamine and manufacturing methamphetamine per KRS 505.020(1) if the methamphetamine that he was convicted of possessing was not the same methamphetamine that he was convicted of manufacturing."[12]

So in *Beaty,* the Court suggested jury instructions that would avoid a double-jeopardy error when the trial court instructs the jury that it may convict the defendant of both manufacturing methamphetamine and possession of a controlled substance. In that instance, we recommended an additional instruction to guide the jury in determining if facts exist to distinguish between these charges. The *Beaty* instruction for first-degree possession charge reads as follows:

---

[10] *Beaty v. Commonwealth,* 125 S.W.3d 196 (Ky. 2003), abrogated on other grounds by *Geary v. Commonwealth,* 490 S.W.3d 354 (Ky. 2016).

[11] *Id.* at 212.

[12] *Id.* at 213 (citing *United States v. Graham,* 275 F.3d 490, 519-20 (6th Cir. 2001)).

You will find the Defendant guilty of first-degree possession for a controlled substance under this Instruction, if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

    A. That in this county on about [Insert Date] he had in his possession a quantity of methamphetamine.

AND

    B. That he knew the substance so possessed by him was methamphetamine.

AND

    C. If you have found the Defendant guilty of manufacturing methamphetamine under [Another Instruction], that the substance so possessed by him was not a product of the same manufacturing process for which you have found him guilty under that Instruction.

The distinguishing provision in part C of the *Beaty* instruction is designed to guard against potential double-jeopardy error.

The jury instructions in the present case do not employ the *Beaty* instruction. Rather, the trial court gave general jury instructions for manufacturing methamphetamine and possession of a controlled substance, which erroneously failed to require the jury to make a factual finding that would differentiate between the methamphetamine that was the product of the defendant's manufacturing and any methamphetamine that the defendant possessed. Without requiring this factual distinction to be made, like the flawed jury instructions in *Beaty*, the instructions for manufacturing and possession in the present case resulted in convictions that violate Marshall's right to be free of double jeopardy.

We next turn to Marshall's assertion that his conviction for manufacturing methamphetamine and his conviction for possession of drug-paraphernalia under KRS 218A.500(2) violated his right to be free from double

7

jeopardy. In doing so we are mindful of *Beaty* and follow its logic in our analysis.

KRS 218A.500(2) provides that it is "unlawful for any person to use, or to possess with the intent to use, drug paraphernalia for the purpose of ... manufacturing ... a controlled substance in violation of this chapter."[13] Similar to the possession-of-a-controlled-substance conviction, the jury instructions in the present case failed to require the jury to determine whether the paraphernalia charge stemming from possession of the coffee filters is subsumed within the conviction of manufacturing methamphetamine.

One may be convicted for manufacturing methamphetamine under two distinct theories. The first theory is that the defendant actually manufactured methamphetamine.[14] Conviction under this theory requires that the defendant manufacture some quantity of methamphetamine, though it does not have to be in usable form.[15] The second theory for conviction requires a defendant to possess two or more chemicals or two or more items of equipment with the intent to manufacture methamphetamine.[16]

The facts in today's case provide us with the opportunity to review Marshall's paraphernalia conviction while applying the logic of *Beaty*. The jury instructions with regard to the paraphernalia charge instructed the jury to find

---

[13] KRS 218A.500(2).

[14] KRS 218A.1432(1)(a).

[15] *See Shemwell v. Commonwealth,* 294 S.W.3d 430 (Ky. 2009); *Robinson v. Commonwealth,* 181 S.W.3d 30 (Ky. 2005).

[16] KRS 218A.1432(1)(b).

Marshall guilty if he possessed coffee filters and if he knew the filters would be used to manufacture methamphetamine. It is this instruction, paired with the instruction for manufacturing methamphetamine that compels consulting *Beaty* for guidance.

The briefs indicate that the Commonwealth pursued a theory of the case under KRS 218A.1432(1)(a), that Marshall had actually manufactured methamphetamine. In Marshall's case, the coffee filters mentioned in the jury instructions contained the only evidence of methamphetamine in the form of residue present in the filters–key evidence in proving guilt under a theory that Marshall had manufactured methamphetamine. While the intent of the Commonwealth may have been to separate the methamphetamine residue found on the coffee filter from the coffee filter itself–using the residue as a means for a conviction for actual manufacturing and the coffee filter as paraphernalia–it is impossible to discern this from the jury instruction given. It is important to note that the only filters discussed in the briefs are the ones that the Commonwealth argues had already been used in the manufacturing process, making it unlikely they would be used again in the future, possibly eliminating the circumstance where the used filter would be reused to manufacture a controlled substance as required by the paraphernalia charge.

This is not to say one can never be convicted of manufacturing methamphetamine under KRS 218A.1432(1)(a), while also being convicted for possession of drug paraphernalia under KRS 218A.500(2). KRS 218A.1432(1)(a) contemplates one actually manufacturing methamphetamine,

9

while the drug paraphernalia charge contemplates a future use of the paraphernalia. For instance, one may have actually manufactured methamphetamine but also may have paraphernalia, such as a device used for consumption of a controlled substance.

As noted above, the second theory used to sustain a conviction for manufacturing methamphetamine is KRS 218A.1432(1)(b), which provides that one is guilty of manufacturing methamphetamine if one possesses two or more chemicals or two or more items of equipment with the intent to manufacture methamphetamine. Coffee filters are commonly used as equipment in the production of methamphetamine.[17]

If Marshall had been convicted of manufacturing methamphetamine under the theory of possessing two or more pieces of equipment with the intent to manufacture methamphetamine, then the drug paraphernalia conviction for the coffee filter would not be appropriate. That is because coffee filters are commonly used in the production of methamphetamine and are most commonly considered equipment.[18] Both the paraphernalia charge and the manufacturing charge under the above theory require the same elements under the present facts, that the individual possess the coffee filters with the intent to manufacture a controlled substance, in this case, methamphetamine.

---

[17] *Sevier v. Commonwealth*, 434 S.W.3d 443 (Ky. 2014) ("Meth oil consists of meth flakes suspended in liquid, which is poured through a coffee filter in order to capture meth flakes, which are the end product of manufacturing methamphetamine.").

[18] *Id.*

10

To avoid the issue we are facing today, an instruction similar to the one given in *Beaty* should be given. A distinguishing provision requiring the jury to declare that the coffee filters in question were separate from those which would have led to Marshall's conviction for manufacturing methamphetamine. Unfortunately for the Commonwealth, without a similarly worded distinguishing jury instruction for the paraphernalia conviction, we find ourselves in a similar situation as the possession of a controlled substance conviction.

Following our above logic, Marshall's conviction for possession of paraphernalia must also be reversed. The decision to reverse the lesser of the two convictions is not only consistent with our decision in *Beaty*, but also our decision in *Clark v. Commonwealth*, where we stated that "maintaining the more severe convictions and vacating the lesser offense" is the general rule used when a single criminal episode gives rise to multiple convictions.[19]

## D. Marshall Was Not Denied a Unanimous Verdict.

Marshall's last allegation of error is unpreserved. Marshall asserts that he was denied his right to a unanimous jury verdict on the conviction for the manufacturing of methamphetamine under KRS 218A.1432(1).

Marshall asserts that his verdict was not unanimous because the jury was allowed to convict him for manufacturing methamphetamine without

---

[19] *Clark v. Commonwealth*, 267 S.W.3d 668, 678 (Ky. 2008); *See Kiper v. Commonwealth*, 399 S.W.3d 736 (Ky. 2012); *Lloyd v. Commonwealth*, 324 S.W.3d 384, 391 n. 26 (Ky. 2010) ("[t]he remedy for these types of double jeopardy violations is to vacate the conviction of the lesser offense.")

specificity as to which theory of manufacturing he was guilty of. In *Wells v.*
*Commonwealth* we stated, "a verdict cannot be successfully attacked upon the
ground that the jurors could have believed either of the two theories of the case
where both interpretations are supported by the evidence and the proof of
either beyond a reasonable doubt constitutes the same offence."[20]

In Marshall's case, he could have been convicted of manufacturing
methamphetamine under the theory of actually manufacturing
methamphetamine or possession of two or more pieces of equipment or
chemicals with the intent to manufacture methamphetamine.[21]

As discussed in length above, the theory that he manufactured
methamphetamine is supported by the fact that he was found in a trailer, with
an active methamphetamine lab, and coffee filters containing meth residue.

The evidence also supported a conviction for manufacturing
methamphetamine under the second theory. The second theory for conviction
requires that Marshall possessed two items of equipment or chemicals with the
intent to manufacture methamphetamine. During the search conducted by the
authorities, in addition to discovering the coffee filters, the police found: a
bottle of liquid fire or lye, scissors, a lithium battery, used tinfoil, a twelve-inch
piece of tubing, a snorting straw, gel pills of Alka Seltzer, a bottle top, and an
empty bottle of starter fluid. These items are sufficient for a jury to find
Marshall guilty of manufacturing methamphetamine under the theory of

---

[20] *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978).
[21] KRS 218A.1432(1).

12

possessing two or more chemicals or two or more items of equipment with the intent to manufacture methamphetamine.

Accordingly, Marshall's conviction for manufacturing methamphetamine under the trial court's instruction satisfies our rule set forth in *Wells*.

## III. CONCLUSION

For the foregoing reasons, the trial court is affirmed in part and reversed in part. Further, we remand the case back to the trial court for resentencing in accordance with our holding.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Roy Alyette Durham II
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General