RENDERED: MARCH 17, 2016
TO BE PUBLISHED

𝕾upreme 𝕮ourt of 𝕶entucky FINAL

2014-SC-000405-MR

DATE 4-7-16 Enid Grouph D.C.

THOMAS J. DAVIS                                                    APPELLANT

                        ON APPEAL FROM MCLEAN CIRCUIT COURT
V.                      HONORABLE BRIAN WIGGINS, JUDGE
                        NO. 14-CR-000007

COMMONWEALTH OF KENTUCKY                                            APPELLEE

**OPINION OF THE COURT BY JUSTICE VENTERS**

**REVERSING AND REMANDING**

Appellant, Thomas J. Davis, entered a conditional guilty plea in the McLean Circuit Court to charges of first-degree trafficking in a controlled substance, first-degree possession of drug paraphernalia, and being a first-degree persistent felony offender. Judgment was entered accordingly, and pursuant to the plea agreement, he was sentenced to a total of twenty years in prison.

The issue preserved for appeal is the trial court's denial of Appellant's motion to suppress evidence that was found on his person and in his car following a sniff search by a narcotics-detection dog. The search was conducted after a routine traffic stop, which Appellant contends was unlawfully extended beyond its original purpose to enable the sniff search. In addition to

evidence found on his person and in his car, Appellant seeks to suppress incriminating statements he made following his arrest. For the reasons stated below, we reverse Appellant's conviction and remand this case to the trial court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Officer Tim McCoy was on duty in the late evening hours, parked on the side of a remote gravel road in a rural area of McLean County, as he described it, "looking for DUI drivers." Riding with McCoy that evening was his canine partner, Chico. Chico is a trained and certified narcotics-search dog. McCoy was aware of allegations that Appellant was involved with illegal drugs. Earlier that day he had discussed those allegations with other police officers. As McCoy sat by the roadside on the lookout for drunk drivers, Appellant drove by, and McCoy decided to follow him.

RCr 8.27 governs motions to suppress evidence and requires the trial court to "state its essential findings on the record." RCr 8.27(5), RCr 8.20(2); see also CR 52.01. On appellate review of the denial of a motion to suppress evidence, we first review the trial court's findings of fact under the clearly erroneous standard;[1] under this standard, the trial court's findings of fact will

---

[1] A factual finding is not clearly erroneous if it is supported by substantial evidence, that is, "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted).

be conclusive if they are supported by substantial evidence. *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015).

Appellant does not challenge the trial court's factual findings. We find them to be supported by substantial evidence, and so they are binding upon our review. Appellant contends that the trial court erred in its application of the law to the facts which, in Appellant's view, compelled a conclusion that Chico's sniff search was illegal because it occurred *after* McCoy had accomplished the purpose of the traffic stop. We undertake a *de novo* review of the trial court's application of the law to the facts to determine whether its decision to deny the motion to suppress was correct as a matter of law. *Id.*; *see also Payton v. Commonwealth*, 327 S.W.3d 468, 471–472 (Ky. 2010).

Following the suppression hearing, the trial court found the facts to be as follows. McCoy saw Appellant's vehicle cross the center line of the road two or three times, a well-known indication that the driver may be intoxicated. McCoy then initiated a traffic stop. When he approached the driver's window, McCoy recognized Appellant and smelled alcohol coming from within the vehicle. He also noticed an open beer can in the center console next to the driver. McCoy asked Appellant about the beer can, and Appellant said that he had just opened it and had drank about half of it.

McCoy then asked Appellant to exit the vehicle. Over the next few minutes, McCoy conducted a pat-down search of Appellant and he administered two field sobriety tests. Appellant passed both tests. The preliminary breath test registered no presence of alcohol.

McCoy then asked if he could search Appellant's vehicle. Appellant refused to consent to the search, telling McCoy that several people had recently used his car, and he did not know what was in it. At that point, McCoy informed the defendant that he was going to have Chico perform a sniff search of the vehicle's exterior. Although Appellant objected, the sniff search proceeded.

According to the trial court's finding, Chico sniffed for "approximately one to two minutes" before he "alerted on a lower panel door of the vehicle, indicating to McCoy that narcotics were inside." By that time, another officer had arrived on the scene. Appellant's person was more thoroughly searched and a quantity of what looked like methamphetamine was found. Thirteen minutes after the initial stop, Appellant was arrested and taken into in custody.

When the officers searched the interior of the Appellant's vehicle, they found more methamphetamine, scales, syringes, and plastic baggies. Upon later interrogation at the sheriff's office, and after receiving his Miranda warnings, Appellant admitted he was involved in the drug trade because he had lost his job after he had refused to take a drug test.

The trial court also found that McCoy's purpose for conducting the traffic stop was to "stop a careless driver in order to verify his sobriety (or lack thereof)." This particular finding was mentioned in the "Conclusions of Law" section of the trial court's order. It is, nevertheless, a factual matter that is crucial to our review.

4

# II. ANALYSIS

Appellant moved to suppress the incriminating evidence discovered on his person and in his vehicle, as well as his subsequent admissions, on the basis that all of the evidence was the fruit of an illegal search that occurred after the lawful traffic stop was unlawfully extended. "It has long been considered reasonable for an officer to conduct a traffic stop if he or she has probable cause to believe that a traffic violation has occurred." *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013) (citing *Wilson v. Commonwealth*, 37 S.W.3d 745 (Ky. 2001)." "As long as an officer 'has probable cause to believe a civil traffic violation has occurred, [he] may stop [the] vehicle regardless of his or her subjective motivation in doing so.'" *Id.* (quoting *Wilson*, 37 S.W.3d at 749); *see also Terry v. Ohio*, 392 U.S. 1 (1968) (permitting an investigatory detention upon a reasonable suspicion that criminal activity is afoot).

We agree with the trial court that Officer McCoy lawfully stopped Appellant's vehicle after witnessing it cross the center line. This observed violation, supported by the observation of the open beer can in the car, provided reasonable suspicion that Appellant may have been driving while intoxicated. Accordingly, McCoy was authorized to detain Appellant for the routine purpose of determining his state of sobriety and his ability to drive. This lawful detention properly extended throughout the time required to administer the two field sobriety tests. The critical question is whether, after the field sobriety tests and McCoy's personal observation of Appellant

substantially eliminated a legitimate concern about Appellant's sobriety, it was lawful to prolong the detention to enable Chico to perform the sniff search.

"Although an officer may detain a vehicle and its occupants in order to conduct an ordinary traffic stop, 'any subsequent detention . . . must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference.'" *Turley v. Commonwealth*, 399 S.W.3d 412, 421 (Ky. 2013) (quoting *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005) (citation omitted)).[2] "Thus, an officer cannot detain a vehicle's occupants beyond completion of the purpose of the initial traffic stop unless something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity [is] afoot." Id. (citations and internal quotations omitted); *see also United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir.1998).[3] If the traffic stop is prolonged beyond the time required for the purpose of the stop, "the subsequent

---

[2] *See also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

In *Caballes*, while one officer was writing a warning ticket, another officer walked the narcotics-detection dog around the car. The dog alerted at the trunk, the officers searched it, found marijuana, and then arrested Caballes. The entire event lasted less than ten minutes. The Court "accept[ed] the state court's conclusion that the duration of the stop in th[at] case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop." *Id.* at 408.

[3] In *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir.1998), the Tenth Circuit noted two circumstances that may justify an extended detention beyond the purpose of the initial stop. First, the officer may detain the driver for questioning unrelated to the initial stop if he acquires an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring; Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter. Neither circumstance is present in this case.

6

discovery of contraband is the product of an unconstitutional seizure." *Epps v. Commonwealth*, 295 S.W.3d 807, 811 (Ky. 2009) (citation omitted).

In *Epps*,[4] we explained that a canine sniff search for drugs itself does not necessarily implicate Fourth Amendment concerns because a vehicle owner has no reasonable expectation of privacy that this mode of narcotics detection will not be used during a legitimate traffic stop. *Id.* at 810. As long as the sniff search is conducted during the course of a lawful traffic stop, including any lawful extensions of the traffic stop, the search is proper and does not violate the Fourth Amendment. *Johnson v. Commonwealth*, 179 S.W.3d 882, 884 (Ky. App. 2005) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983) ("Investigative detention [in relation to a narcotics canine sniff search] must be temporary and last no longer than is necessary to effectuate the purpose of the stop.").

However, as recently clarified by the United States Supreme Court in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), a police officer may not extend a traffic stop beyond its original purpose for the sole purpose of conducting a sniff search—not even for a *de minimus* period of time.

In *Rodriguez*, a police officer stopped Rodriguez for driving on a highway shoulder in violation of Nebraska law. After completing all matters related to

---

[4] In *Epps* the driver was stopped for making an illegal turn. After the driver denied a request to consent to a search of his vehicle a narcotics detection canine was brought to the scene and alerted on the vehicle. Upon review we held that "Simply put, the scope and duration of the stop in this case—fifteen minutes before the narcotics-detection dog arrived, thirty to forty more minutes for the dog to search the car, one hour before the driver was given a citation, and 90 minutes of total detention before the Appellant-passenger was arrested—exceeded that allowed for a mere traffic offense. The stop, therefore, was unreasonable and so prolonged as to be unjustified." *Id.* at 813 (citation and internal quotes omitted).

7

the purpose of the stop, including the issuance of a warning for the traffic violation and checking the driver's licenses of Rodriguez and his passenger, the officer asked if Rodriguez would permit a police dog to walk around the vehicle. When Rodriguez refused, the officer detained him until a second officer arrived. The canine was then directed to search, and it alerted to the presence of drugs in the vehicle. The ensuing search revealed methamphetamine. Seven or eight minutes elapsed between the issuance of the traffic warning and the dog's alert. *Id.* at 1612.

After his indictment on federal drug charges, Rodriguez moved to suppress the fruits of the dog sniff search. The trial court concluded that, under Eighth Circuit precedent, the extension of the stop by "seven to eight minutes" while the dog sniffed was a *de minimis* intrusion on Rodriguez's Fourth Amendment rights. Suppression was denied. *Id.* at 1613. The Eighth Circuit affirmed, stating that the delay constituted an acceptable "*de minimis* intrusion on Rodriguez's personal liberty." *Id.*

The United States Supreme Court reversed, holding that there is no *de minimis* time exception to the rule that a traffic stop may not be extended beyond its original purpose without an additional reasonable suspicion to do so. The *Rodriguez* Court explained that, in addition to determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop," such as checking for outstanding warrants, inspecting auto registration, and proof of insurance. *Id.* at 1615 (citations omitted). "A dog sniff, by contrast, is a measure aimed at detect[ing] evidence of ordinary

8

criminal wrongdoing," *id.* (internal citation and quotation omitted), and is not an ordinary incident of a traffic stop. *Id.* A traffic stop prolonged beyond the point reasonably required by the officer to complete the stop's mission is an unlawful stop. *Id.* at 1616.

Significantly, the Court concluded that "[t]he critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff "prolongs"—i.e., adds time to—"the stop[.]" *Id.*

With this principle in mind, we return to the trial court's denial of Appellant's motion to suppress. The trial court found that "McCoy's obvious purpose was to stop a careless driver in order to verify his sobriety (or lack thereof)." Therefore, under *Rodriguez, any* nonconsensual extension of the detention beyond the time taken to verify Appellant's sobriety, unless accompanied by additional grounds to believe other criminal activity was afoot, was unconstitutional.

The trial court concluded, however, that the purpose of the stop had not been "effectuated," apparently because McCoy had not yet decided whether to let Appellant go free or charge him with reckless driving and the open container. In the trial court's analysis, "[t]he key issue [is] whether the duration of the defendant's detention after the administration of the field sobriety tests was so prolonged as to be unjustified," noting further:

> Most importantly, the Court notes that the length of the stop from
> its inception (11:06 p.m.) to the defendant's arrest (11:19 p.m.) was
> only thirteen minutes. Obviously, the length of the stop from its

9

inception to the point that the canine alerted to the presence of narcotics was of an even shorter duration. *All things considered, this Court simply cannot characterize the length of the defendant's detention as unreasonable.*

(Emphasis added.)

However, as explained in *Rodriguez, any* prolonging of the stop beyond its original purpose is unreasonable and unjustified; there is no *"de minimus exception"* to the rule that a traffic stop cannot be prolonged for reasons unrelated to the purpose of the stop. To the extent that *Epps* and *Johnson* suggest otherwise, they are necessarily overruled by our acknowledgment of *Rodriguez.* The "key question" is *not* whether the duration of Appellant's roadside detention was unreasonable; rather, it is whether the sniff search was related to *the purpose* for which Appellant was stopped; that is, a DUI traffic stop to ascertain a driver's sobriety.

McCoy's testimony regarding the status of the stop after Appellant had passed the two field tests was somewhat inconsistent. He first testified that he determined that Appellant was not intoxicated when he passed the two sobriety tests, thus implying that the original purpose of the stop had been completed. However, he later testified that, after Appellant passed the field sobriety checks, his focus shifted to determining if Appellant was driving under the influence of narcotics rather than alcohol as indicated by the open beer can, thus giving rise to the need for Chico's service. Under that reasoning, it is argued, the "purpose of the stop" had not been effectuated because McCoy opted to prolong the detention to resolve a lingering question of whether

10

Appellant, if not driving under the influence of alcohol, was instead driving under the influence of drugs.

The problem with this reasoning is that, in addition to passing two sobriety tests, no evidence suggests that Appellant's speech, demeanor, or behavior otherwise exhibited any characteristics associated with drug or alcohol intoxication from which an officer might reasonably believe further investigation was necessary. Moreover, a sniff search of the vehicle by Chico could not possibly serve the purpose of the traffic stop by showing whether Appellant was driving under the influence of any substance. The only reason for the sniff search was to discover illegal drugs in Appellant's car, which adds nothing to indicate if the driver is under the influence and is clearly beyond the purpose of the original DUI stop. The evidence unequivocally established, and the Commonwealth agrees, that McCoy had concluded his field sobriety investigation. It is obvious that his purpose then shifted to a new and different purpose. With no articulable suspicion to authorize an extended detention to search for drugs, McCoy prolonged the seizure and conducted the search in violation of *Rodriguez* and Appellant's Fourth Amendment protections. Consequently, we conclude that the fruits of that search must be suppressed.

The Commonwealth suggests that even if the search was unlawful, the evidence is not subject to suppression because it would have been inevitably discovered. "In *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court adopted the 'inevitable discovery rule' to permit admission of evidence unlawfully obtained upon proof by a

11

preponderance of the evidence that the same evidence would have been inevitably discovered by lawful means." *Hughes v. Commonwealth*, 87 S.W.3d 850, 853 (Ky. 2002).

Under this theory, Officer McCoy could have arrested Appellant for reckless driving and the open container at the conclusion of the field sobriety testing. He then would have been subject to search incident to arrest, and the evidence on his person would have been discovered. Presumably, the drugs in the car also would have been discovered either by an inventory search or a search pursuant to a warrant.

However, with no compelling indicators that Appellant was actually intoxicated, it is far from inevitable that he would have been arrested by McCoy. Obviously, McCoy was not satisfied from his own observations that he should charge Appellant with DUI. Confined to what can be fairly gleaned from the record, it is equally likely that McCoy would have disposed of the minor offenses with a citation, or simply released the motorist with a warning. The discovery of the evidence as suggested by the Commonwealth was not inevitable.

### III.     CONCLUSION

For the foregoing reasons, the evidence obtained against the Appellant as a result of the unlawful search should have been suppressed. The judgment of the McLean Circuit Court is hereby reversed. This matter is remanded to the McLean Circuit Court for further proceedings consistent with this decision.

All sitting. All concur.

12

COUNSEL FOR APPELLANT:

JULIA KAROL PEARSON
ASSISTANT PUBLIC ADVOCATE
DEPARTMENT OF PUBLIC ADVOCACY

COUNSEL FOR APPELLEE:

ANDY BESHEAR
ATTORNEY GENERAL OF KENTUCKY

JULIE SCOTT JERNIGAN
ASSISTANT ATTORNEY GENERAL