RENDERED:  SEPTEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000472-MR

DARRELL FOSTER                                                      APPELLANT

APPEAL FROM CALLOWAY CIRCUIT COURT
v.      HONORABLE JAMES T. JAMESON, JUDGE
ACTION NO. 18-CR-00042

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  MAZE, TAYLOR, AND K. THOMPSON, JUDGES.

MAZE, JUDGE:  Darrell Foster appeals from a judgment of conviction by the

Calloway Circuit Court following a conditional guilty plea.  He argues that the trial

court erred by denying his motion to suppress evidence seized during a traffic stop.

We agree with the trial court that the officers did not unduly prolong the stop to

conduct the canine sniff of the vehicle. Hence, we affirm the denial of his motion to suppress and his conviction.

On March 1, 2018, a Calloway County grand jury returned an indictment charging Foster with driving too slow for traffic conditions, operating a motor vehicle on an expired license, possession of marijuana, possession of drug paraphernalia, possession of a controlled substance in the third degree, trafficking in a controlled substance in the first degree (greater than 2 grams methamphetamine), and bail jumping. Subsequently, Foster filed a motion to suppress the evidence seized by the Murray Police Department on January 26, 2018. The trial court conducted an evidentiary hearing at which Officer Jesse Hicks and Officer Anna Wicker testified.

On January 26, 2018, Officer Hicks and Officer Wiggins initiated a traffic stop on a vehicle of which Foster was the driver and sole occupant. Officer Hicks was in field training with Officer Wiggins being his training officer. Officer Hicks testified that he observed Foster driving too slowly in the right-hand lane. Officer Hicks testified that multiple vehicles had "piled up" behind Foster and that he determined Foster to be travelling at 35 mph in a 55-mph zone by pacing him. Officer Hicks testified, and dash cam footage confirmed, that Foster did not immediately stop but instead stopped at the first parking lot available. Officer Hicks approached Foster's vehicle, and Foster rolled down his back window.

Officer Hicks inquired as to why he did not roll down the front window to which Foster stated that his front, driver's side window did not work. Officer Hicks then ran Foster's license. Officer Anna Wicker then arrived on scene and began talking to Foster about the traffic stop. Officer Wicker is a canine officer with the Murray Police Department. At this point, Officer Hicks learned that Foster's driver's license was expired and began working on the citation.

Officer Hicks testified that Officer Wicker heard the stop over police radio and responded without a request from Officer Hicks to do so. Officer Wicker testified that it was common practice for two cars to respond to a stop, especially when the initiating officer is still in training, as Officer Hicks was. Officer Wicker initially spoke with Foster about the traffic citation, and then asked if she could conduct a dog sniff around his vehicle. Foster refused and became argumentative. Officer Wicker asked Foster to step out of the vehicle, to which Foster verbally refused. Officer Wicker opened the driver's side door and continued to ask Foster to step out of the vehicle. Foster then began arguing with Officer Wicker and continued to refuse. At this point, Officer Wiggins had joined Officer Wicker.

Shortly thereafter, dash cam footage shows that Officer Hicks stepped out of his cruiser for approximately 40-45 seconds and stood by as Foster argued with Officers Wicker and Wiggins. Foster argued with officers for approximately 30 seconds before finally exiting the vehicle after Officer Wicker removed him.

Officer Hicks then returned to his cruiser and continued working on the traffic citation. Foster was then moved away from the vehicle, accompanied by Officer Wiggins.

Officer Wicker then retrieved her dog and performed a dog sniff around the exterior of Foster's vehicle. Officer Wicker conducted a dog sniff around Foster's vehicle that lasted approximately one minute and twenty seconds (1:20). Officer Wicker's canine then alerted on the driver's side rear door. Officers searched the vehicle and found a container with a false bottom containing thirteen and a half grams of methamphetamine in packaging. In addition, officers discovered seven and a half Xanax pills, five grams of marijuana, cash, scales, and baggies during the search. The total time from emergency light activation to detention was fourteen minutes and thirty-four seconds (14:34). The amount of time that passed from Officer Hicks first approaching Foster to Officer Wicker's dog search ending with a hit was five minutes and thirty-two seconds (5:32). Officer Hicks testified that it takes ten to fifteen minutes to type a traffic citation.

Foster argued that the evidence should be suppressed because the stop was impermissibly prolonged. The trial court disagreed, finding that Officer Hicks diligently pursued the traffic stop. After the trial court denied the motion to suppress, Foster subsequently entered a conditional plea of guilty to one count of first-degree trafficking in a controlled substance, greater than or equal to two

grams of methamphetamine. He accepted the Commonwealth's offer of eight years. The other charges were dismissed. Pursuant to the Commonwealth's recommendation, the trial court sentenced Foster to a total of eight years' imprisonment. This appeal followed.

On appellate review of the denial of a motion to suppress evidence, the trial court's findings of fact are reviewed using the clearly erroneous standard. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). The trial court's findings of fact are considered conclusive if they are supported by substantial evidence. *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015). The trial court's factual findings are not challenged on appeal. Foster contends that the trial court erred in its application of the law to the facts. The appellate court must then conduct a *de novo* review of the trial court's application of the law to the facts to determine whether the trial court erred in denying the motion to suppress evidence as a matter of law. *Id.*

Foster argues that Officer Hicks unreasonably prolonged the stop by stepping out of his cruiser, thus ceasing to diligently pursue the traffic citation. The issue of law raised on appeal is whether the duration of the stop was prolonged beyond the "tolerable" amount required "to address the traffic violation that warranted the stop[.]" *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015). The purpose of a stop in the traffic context

has been defined by the Supreme Court to include "determining whether to issue a traffic ticket . . . checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.*, 575 U.S. at 355, 135 S. Ct. at 1615. A dog sniff itself, conducted during a lawful traffic stop, does not violate the Fourth Amendment as it "reveals no information other than the location of a substance that no individual has any right to possess[.]" *Illinois v. Caballes*, 543 U.S. 405, 410, 125 S. Ct. 834, 838, 160 L. Ed. 2d 842 (2005). Similarly, "[t]he Fourth Amendment may tolerate certain unrelated investigations that do not lengthen the roadside detention[.]" *Rodriguez*, 575 U.S. at 349, 135 S. Ct. at 1611 (citing *Arizona v. Johnson*, 555 U.S. 323, 327-28, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009) and *Caballes*, 543 U.S. at 406, 408, 125 S. Ct. 834). However, a police stop exceeding the time reasonably required to carry out the purpose of the stop violates the Fourth Amendment's "shield against unreasonable seizures." *Id.*, 575 U.S. at 350, 135 S. Ct. at 1612.

Further, an officer's subjective intentions are of no importance in "ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). "When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing

*Whren*, 517 U.S. at 813, 116 S. Ct. 1769). Lastly, the Supreme Court has stated that an alert from a certified dog constitutes probable cause to search. *Florida v. Harris*, 568 U.S. 237, 247, 133 S. Ct. 1050, 1057, 185 L. Ed. 2d 61 (2013).

An officer who has "probable cause to believe a civil traffic violation has occurred may stop a vehicle[.]" *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001). Officer Hicks had probable cause to believe a traffic violation had occurred under Kentucky Revised Statutes (KRS) 189.390(7) stating "[a] person shall not drive a motor vehicle at a speed that will impede or block the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law." Officer Hicks testified that he observed Foster impeding the normal movement of traffic, creating a line of traffic behind him, by driving approximately 35 mph in a 55-mph zone. Officer Hicks paced Foster, determined his speed, and pulled him over. Foster does not contest the initial traffic stop, and the trial court found the initial stop valid.

As discussed above, the total time from emergency light activation to detention was fourteen minutes and thirty-four seconds (14:34). The amount of time that passed from Officer Hicks first approaching Foster to Officer Wicker's dog search ending with a hit was five minutes and thirty-eight seconds (5:38). At the point Wicker's dog "hit," officers then had probable cause to believe that Foster was in the possession of narcotics, allowing them to prolong the detention

and search the vehicle. The Supreme Court has stated that an alert from a certified dog constitutes probable cause to search. *Harris*, 568 U.S. at 247, 133 S. Ct. at 1057.

Foster focuses on the 40-45 seconds that Officer Hicks stepped out of his cruiser while Officer Wicker attempted to get Foster to exit the vehicle. However, any officer on scene could have required Foster to step out of the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333, 54 L. Ed. 2d 331 (1977). The authority to require a driver to step out of the vehicle does not lie solely in the initiating officer but rather every officer responding to the traffic stop. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.*, 434 U.S. at 111 n.6, 98 S. Ct. at 333 n.6. The "legitimate and weighty" interest in officer safety justifies the "*de minimis*" additional intrusion of requiring a driver who has been lawfully detained to step out of the vehicle. *Id.*, 434 U.S. at 110-11, 98 S. Ct. at 333.

When Officer Hicks stepped out of his cruiser, an issue of officer safety had already been implicated while a canine search had not been initiated. Officer Wicker had discussed the traffic violation with Foster and asked him to step out for officer safety reasons once he became verbally combative at the

mention of a canine search. At this point in the interaction, Officer Wicker was not *conducting* a canine search, she was mentioning the possibility of one to Foster, and the following interaction with Officer Hicks stepping out of his cruiser was time allotted to "attend to related safety concerns." *Rodriguez*, 575 U.S. at 348, 135 S. Ct. at 1611.

Further, "[t]he critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop." *Id.*, 575 U.S. at 349, 135 S. Ct. at 1612. A "dog sniff" is not part of "the officer's traffic mission." *Id.*, 575 U.S. at 356, 135 S. Ct. at 1615. However, it is constitutionally permissible so long as it does not prolong the seizure "'beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.*, 575 U.S. at 350-51, 135 S. Ct. at 1612 (citing *Caballes*, 543 U.S. at 407, 125 S. Ct. 834).

In this case, Officer Hicks momentarily stepped out of his cruiser and stopped processing Foster's traffic violation. His actions were in furtherance of the officer safety issue and were not related to the dog sniff that Officer Wicker later conducted. After Foster was removed from the vehicle, Officer Hicks immediately began working on the traffic violation again. To consider this slight delay, taken for officer safety and amounting to the time it took for Foster to be removed from his vehicle, an unreasonable seizure would contradict the holding in *Rodriguez*

-9-

both in that it allows officers time to "attend to related safety concerns" and that it is concerned with "whether *conducting* the sniff adds time to the stop." *Id.*, 575 U.S. at 348, 349, 135 S. Ct. at 1611, 1612 (emphasis added).

The Kentucky Supreme Court applied *Rodriguez* in *Davis v. Commonwealth*, 484 S.W.3d 288 (Ky. 2016), and *Commonwealth v. Smith*, 542 S.W.3d 276 (Ky. 2018). In both cases, the officers pulled over the defendant for traffic violations, and then conducted canine searches of the vehicle. In *Davis*, the Court ruled that the purpose of the traffic stop – to stop a careless driver in order to verify his sobriety – had been effectuated; therefore, the canine search prolonged the seizure unconstitutionally. *Davis*, 484 S.W.3d at 294. Likewise, in *Smith*, the Court held that "[i]f the traffic citation was deferred to complete the sniff search, then the officer did not act with reasonable diligence to pursue the legitimate object of the traffic stop." 542 S.W.3d at 282. Under the facts presented in *Smith*, the Court concluded that the canine search "unreasonably prolonged the stop." *Id.*

The Kentucky Supreme Court set forth a scenario that would comprise the constitutional use of a dog sniff in *Commonwealth v. Lane*, 553 S.W.3d 203 (Ky. 2018). In *Lane*, two officers worked in tandem on an initially lawful traffic stop. *Id.* at 204. The officers, however, failed to pursue the mission of the traffic stop at all, and the dog sniff thus unconstitutionally prolonged the stop. *Id.* at 207. The Commonwealth argued that the situation should be viewed as analogous to

that in *People v. Reedy*, 39 N.E.3d 318 (Ill. App. Ct. 2015).  In *Reedy*, one officer undertook the tasks incident to the issuance of the traffic citation, while the other officer deployed the drug search dog to sniff for drugs.  The Illinois Appellate Court concluded that "[g]iven the extremely short duration of the stop and the diligence of the officers executing that stop, including [the canine-handling officer's] prompt arrival on the scene, . . . the traffic stop in question was not unreasonably prolonged." *Id.* at 326.

The Court in *Lane* agreed in principle with *Reedy* but concluded that the facts in its case were different.  *Lane*, 553 S.W.3d at 207.  Unlike in *Reedy*, the defendant in *Lane* was removed from his vehicle well before the sniff search was done.  Moreover, the officers took no further steps on the traffic citation until after the dog sniff search was completed.  Consequently, the Court concluded that, unlike the situation in *Reedy*, the canine search impermissibly extended the duration of the traffic stop.  *Id.*

We conclude that the circumstances of the current case are more similar to those in *Reedy* than in *Davis*, *Smith*, or *Lane*.  Officer Hicks neither deferred his diligent pursuit of the traffic violation nor extended the lawful traffic seizure to conduct a dog sniff.  The only significant deviation involved the approximately 45 seconds during which Officer Hicks was out of his cruiser.  This

delay was permissible to ensure the safety of his fellow officers as per *Rodriguez* and *Mimms*.

Similarly, the canine search did not delay Officer Hicks' processing of the traffic citation. After assisting Officers Wicker and Wiggins in removing Foster from his vehicle, Officer Hicks returned to his cruiser and began working on writing the ticket. Officer Wicker then retrieved the canine and conducted the search. The dog sniff in this case did not prolong the stop beyond the "tolerable" amount of time required "to address the traffic violation that warranted the stop[.]" *Rodriguez*, 575 U.S. at 354, 135 S. Ct. at 1614. Since the search was not unconstitutional, the trial court did not err in denying Foster's motion to suppress the evidence.

For the foregoing reasons, the trial court correctly concluded that the traffic stop was not unreasonably prolonged. Accordingly, we affirm the judgment of conviction by the Calloway Circuit Court.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

TAYLOR, JUDGE, DISSENTS AND DOES NOT FILE A SEPARATE OPINION.

BRIEFS FOR APPELLANT:

Kathleen K. Schmidt
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky