RENDERED:  SEPTEMBER 9, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0757-MR

TIMOTHY PAUL JAMES                                                    APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE ERNESTO M. SCORSONE, JUDGE
ACTION NO. 17-CR-01173-001

COMMONWEALTH OF KENTUCKY                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND COMBS, JUDGES.

COMBS, JUDGE:  Appellant, Timothy Paul James, entered a conditional plea to

importing fentanyl and received a sentence of five-years' imprisonment.  On

appeal, he contends that the trial court erred in denying his motion to suppress

evidence.

On October 18, 2017, James was indicted by a Fayette County Grand

Jury on charges of aggravated trafficking in a controlled substance (greater than 28

grams of fentanyl), importing fentanyl, tampering with physical evidence, and improperly turning without a signal.

On January 10, 2018, James filed a motion to suppress evidence. He asserted that Officer Baker of the Lexington Police Department conducted a traffic stop of his vehicle on September 13, 2017, after having observed that James turned without activating his turn signal. James argued that the traffic stop was unlawfully extended beyond its original scope for the sole purpose of conducting a canine sniff search.

On April 4, 2018, the Commonwealth filed a motion pursuant to KRE 508[1] requesting that the trial court conduct an *in camera* review regarding the use of a confidential informant in the case. The Commonwealth explained that body cam videos -- as later confirmed by the Narcotics Enforcement Unit -- revealed that the police were acting upon specific information provided by a confidential informant. Defense counsel had requested specific information regarding the

---

[1] Kentucky Rule of Evidence 508 provides in relevant part that:

> (a) General rule of privilege. The Commonwealth of Kentucky and its sister states and the United States have a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

confidential informant, and the Commonwealth filed the motion to protect the informant's identity and safety.

On May 3, 2018, the trial court conducted a hearing on the suppression motion. On June 26, 2018, the trial court conducted a hearing *in camera*. On November 8, 2018, the trial court heard testimony concerning the reliability of the confidential informant.

On December 12, 2018, the trial court entered its written order denying defendant's motion to suppress. Based upon testimony presented at the June 26, 2018, hearing, the trial court found that disclosure of the informant's identity would endanger the informant's safety; that the informant's continuing service is of value to law enforcement; and that the Commonwealth had made an adequate showing in support of its claim of privilege under KRE 508. From the testimony presented at the November 8, 2018, hearing, the trial court found that the informant "has proven to be incredibly reliable and useful to law enforcement" by aiding law enforcement with multiple investigations over a period of years -- and that "the informant 'was qualified' in 2017 and has received compensation for useful information."

The trial court further found that:

> On September 13, 2017, . . . [a]ccording to Officer
> Baker, the Narcotics Enforcement Unit, specifically,

Detective Todd Hart, briefed members of the CLEAR[2] unit earlier that evening on a narcotics investigation . . . that a vehicle matching the make and model of the Defendant's car bearing Michigan plates, occupied by a white male and black female, and connected to Yusef Kwan Wesley (known to law enforcement to be engaged in narcotics activity) would be arriving in Lexington off of Interstate 75 later that evening. It was further explained that the vehicle would contain approximately eighty (80) grams of heroin. The information had come by way of a confidential informant providing police with the information.

Officers set up patrol near the interstate in order to observe the vehicle arriving into Lexington. . . . At some point in the evening another officer observed the described vehicle come off of the interstate and travel to a gas station. . . . multiple officers . . . observed a white male and black female with the car. Officers communicated their observations over an encrypted radio channel. Shortly thereafter, officers observed the vehicle leave the gas station failing to use its turn signal in the vicinity. This information was relayed to Officer Baker who began making his way toward the area.

Officer Baker observed the vehicle in the area of North Broadway and West Fourth Street, confirming that the vehicle was the same described by narcotics detectives and seen moments earlier by other officers, both marked and unmarked, at the gas station. While observing the vehicle, Officer Baker himself observed the Defendants fail a second time to use a turn signal prior to 100 feet of the turn. Officer Baker activated his lights and conducted a traffic stop of the vehicle. Prior to

---

[2] Officer Baker, a member of the CLEAR unit, testified at the May 3, 2018, hearing. The CLEAR unit is a Community Law Enforcement Action Response unit. Typically, members are directed to operate in areas perceived to have a high level of violent activity and street-level drug activity. They also assist units within the detectives bureau, including the Narcotics Enforcement Unit, that require a uniformed police officer in a marked vehicle.

the stop, Sergeant Brian Martin, in an unmarked vehicle, drove past the Defendant's car and observed Johnson [the passenger] conceal something in her pants, information which was relayed to Officer Baker.

As Officer Baker made his way to the vehicle he observed the Michigan plates and also confirmed that the driver was a white male, Timothy James, and the front passenger was a black female, Wilma Johnson. Officer Baker also observed James as being nervous. At the outset of the stop, a K-9 unit was requested prior to making contact with the Defendants at 23:42 hours. Officer Baker first obtained identification from the occupants. Given the intelligence received from the briefing, the vehicle possessing Michigan plates, and James having a Kentucky operator's license, Officer Baker asked to whom the vehicle belonged. After a long pause, where James was observed looking toward Johnson, James responded that the vehicle belonged to or was associated with Yusef Wesley, providing further confirmation of the intelligence received by Officer Baker.

Officer . . . Hallock and his K-9, Pedro, arrived at approximately 23:51 hours. . . . Officer John Finley [explained] that a confidential informant had provided information regarding the vehicle. After this explanation, Officer Hallock conducted a sniff of the vehicle. Pedro, trained in the identification of the odors of heron [*sic*], cocaine, meth, and marijuana, immediately indicated to the presence of the odor of narcotics emanating from the vehicle. Officer Baker, alone with other officers, then began a search of the vehicle.

During the search, a quantity of marijuana was located hidden in a deodorant bottle inside Johnson's purse. A search was eventually conducted of Johnson and James, revealing just under fifty (50) grams of

-5-

suspected heroin on James and Johnson, totaling one hundred (100) grams of suspected heroin altogether.[3]

The trial court concluded that the search of the automobile was justified by either one of two theories. One was that information for the stop was provided by a reliable confidential informant that the automobile was being used for drug trafficking. The trial court explained that the information provided was specific, that it included multiple predictive facts, and that "all the facts given by the informant were corroborated by the police on the evening of September 13, 2017." The trial court found that *Cook v. Commonwealth*, 649 S.W.2d 198 (Ky. 1983), was almost a "mirror image" of the case before it. In *Cook*, our Supreme Court relied upon *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), in holding that information from a reliable confidential informant was sufficient to justify an investigative stop.

Alternatively, the trial court explained that "a mere traffic stop can be extended if there is reasonable, articulable suspicion that criminal activity is afoot[,]" citing *Davis v. Commonwealth*, 484 S.W.3d 288, 293 (Ky. 2016), and *Turley v. Commonwealth*, 399 S.W.3d 412, 421 (Ky. 2013). The trial court concluded that Officer Baker had the requisite reasonable suspicion to extend the stop for the canine sniff based upon the knowledge that Sergeant Martin had seen

---

[3] The Commonwealth notes in its Appellee's Brief that the Kentucky State Police lab results confirmed that the narcotics testified positive for fentanyl.

-6-

Johnson conceal something in her pants -- coupled with James's nervous behavior and "more importantly," the prior briefing by the Narcotics Enforcement Unit.

On January 10, 2020, James entered a conditional plea of guilty to importing fentanyl. On March 6, 2020, the trial court entered final judgment and sentence of imprisonment setting James's sentence at five years.

James appeals. "In reviewing a trial court's decision to deny a motion to suppress evidence, we accept the trial court's findings of fact as conclusive if they are supported by substantial evidence. We then review de novo the trial court's application of the law to those facts." *Commonwealth v. Reed*, 647 S.W.3d 237, 242-43 (Ky. 2022) (footnotes omitted).

James argues that: (1) the dog sniff was impermissibly extended beyond the period necessary for a traffic stop; (2) substantial evidence does not support the trial court's conclusion that the confidential informant's information provided reasonable suspicion to conduct a stop; and (3) the informant's "alleged reliability" does not provide reasonable suspicion.

We first address James's second and third arguments together.

> The Fourth Amendment ensures that individuals have the
> right to be free from "unreasonable searches and
> seizures." U.S. CONST. amend. IV. Ordinarily, a search
> or seizure must be based on a warrant supported by
> probable cause. *Navarette v. California*, 572 U.S. 393,
> 396-97, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014).
> However, the Fourth Amendment permits brief
> investigative stops when an officer has a particularized

and objective basis for suspecting that "either the vehicle or an occupant is otherwise subject to seizure for violation of law[.]" *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660 (1979). To conduct an investigative stop, the officer must articulate a "reasonable suspicion" of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 19-31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Whether the officer has reasonable suspicion to conduct a stop is determined by the totality of the circumstances. *Alabama v. White*, 496 U.S. 325, 328, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301 (1990).

. . . .

The standard for an investigative stop is reasonable suspicion, not proof beyond a reasonable doubt or proof by a preponderance of the evidence or even probable cause. A police officer may stop a vehicle based on information from known or even anonymous third parties, as long as the information is supported by an indicia of reliability. *White*, 496 U.S. 329, 110 S. Ct. at 2415-16.

*Benton v. Commonwealth*, 598 S.W.3d 102, 105-106 (Ky. App. 2020) (internal quotation marks and citations omitted).

In the case before us, the information from the confidential informant was supported by multiple indicia of reliability. The trial court found that the informant "has proven to be incredibly reliable and useful" over a period of years in aiding law enforcement with multiple investigations. It also found that in 2017, the informant was qualified and has received compensation for useful information. Detective Hart's testimony at the November 8, 2018, hearing provides a substantial evidentiary foundation to support the trial court's findings, which are conclusive.

-8-

James's attempt to distinguish this case on its facts from *Cook*, *supra*, is unpersuasive. In *Cook*, an informant advised as follows:

> [B]etween 10:00 p.m. and 11:30 p.m. on that night an older model yellow pickup truck occupied by three white males would be travelling along U.S. Highway 42 . . . that it would turn . . . onto Rose Island Lane and . . . proceed to an unidentified house on Rose Island Lane; that the driver . . . would be the appellant Gruneisen; that the other two men were not known to the informant; that they would be in possession of a weapon and should be in possession of cocaine . . . . The informant was known to Detective Murphy and had furnished reliable information on at least three previous occasions.

*Id*. at 198-99. In the case before us, the trial court determined that:

> The facts of *Cook* and this case are similar in terms of the information available to police. Like *Cook*, the Lexington police were provided information regarding the make and model of the vehicle as well as its license plate identification. Like *Cook*, the Lexington police were given a general description of the occupants of the vehicle. Like *Cook*, the Lexington police provided a specific name, Yusef Kwan Wesley, to whom the vehicle was related. Finally, like *Cook*, the Lexington police were provided information as to the quantity and type of narcotics contained within the vehicle.

Again, substantial evidence supports the trial court's factual findings; namely, the testimony of Officer Baker at the May 13, 2018, suppression hearing. We agree with trial court's analysis that based upon the tip from a reliable informant, Officer Baker had reasonable suspicion to justify the investigatory stop of the subject vehicle under *Cook*. Accordingly, we need not address James's

-9-

contention that the length of the stop was impermissibly delayed for the canine sniff. This case is congruent both factually and legally with *Cook*, which governs our analysis.

Therefore, we affirm the Fayette Circuit Court's denial of the motion to suppress.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Julia K. Pearson
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky