RENDERED: MARCH 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1245-MR

LARRY LOVE                                                          APPELLANT

|     | APPEAL FROM HART CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE CHARLES C. SIMMS, III, JUDGE |
|     | ACTION NO. 20-CR-00207 |

COMMONWEALTH OF KENTUCKY                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND GOODWINE, JUDGES.

EASTON, JUDGE: Larry Love ("Love") appeals from an order of the Hart Circuit

Court denying his motion to suppress evidence seized from a vehicle in which he

was a passenger. The evidence obtained from the search resulted in an indictment

of Love, and he subsequently entered a conditional guilty plea to a reduced charge[1]

---

[1] Originally, Love was charged with trafficking methamphetamine.

of possession of a controlled substance, first degree, and possession of drug paraphernalia.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

On January 31, 2020, Detective Guffy with the Barren County Drug Task Force called Detective Eli Dennis, who is employed with the Hart County Sheriff's Office but is also a member of the Greater Hardin County Narcotics Task Force.  Detective Guffy informed Detective Dennis that the Barren County Drug Task Force was conducting surveillance on a residence in the Cave City area of Barren County because the residents were known drug traffickers.

Detective Guffy also informed Detective Dennis that a vehicle arrived at the residence, stayed only a short time, and detectives were following the vehicle, which was traveling northbound on US 31W.  Detective Guffy asked for assistance as the vehicle was headed from Barren County into Hart County. Detective Dennis said Detective Guffy was giving him a "play-by-play" of the movement of the vehicle, which was being surveilled constantly since it left the suspicious residence.

At approximately 2:27 p.m., Deputy Caleb Butler ("Deputy Butler") from the Hart County Sheriff's Office, began following the vehicle in Hart County based on the information from Detective Dennis.  Deputy Butler pulled the vehicle over for going twelve miles per hour over the speed limit.  Upon approaching the

vehicle, Deputy Butler knew three of the four occupants, including Love, based on prior contact with law enforcement due to narcotics use.

Love was sitting in the rear seat on the passenger's side. Deputy Butler did not know the driver who was unable to produce a driver's license. Deputy Butler observed it is normal for people to act nervous during a traffic stop, but the occupants of the vehicle were "above and beyond nervous to the point of manifesting fear." The driver of the vehicle denied Deputy Butler's request to search the vehicle. Deputy Butler stated he separated the parties and, once assistance arrived from the Hart County Sheriff's Office, he began working on the citation. He started this work at approximately 2:39 p.m.

The driver had provided a social security number since he did not have a license. Deputy Butler sought a photo of the driver based on the social security number to ascertain whether the driver had given him false information. Deputy Butler testified that he searched for warrants on the occupants of the vehicle. Deputy Butler eventually confirmed the driver's identity and discovered the driver's license was suspended, but there were no active warrants on any of the occupants of the vehicle. The gathering of this information took time. Deputy Butler testified he did not intentionally drag out the stop. When he began working on the citation, Deputy Butler had requested a canine unit.

Deputy Butler testified the canine unit arrived while he was working on the citation and there was an alert at approximately 2:56 p.m. After the alert, the vehicle was searched, and at 3:09 p.m. Deputy Butler alerted dispatch that drugs were located.[2]

Love asked the trial court to suppress the evidence seized in the search. A hearing was held, the parties briefed the motion, and the trial court ultimately entered an order denying the motion. Love entered a conditional guilty plea and was sentenced to three years' incarceration, consecutive to a methamphetamine trafficking sentence for which Love was on probation at the time of this arrest.[3] This appeal followed.

## STANDARD OF REVIEW

> A trial court's denial of a motion to suppress is reviewed under a two-prong test. First, we review the trial court's findings of fact under the clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. Second, we review de novo the trial court's application of the law to the facts.

---

[2] Deputy Butler testified that the call times on the CAD (computer-aided dispatch) sheet, admitted into evidence at the suppression hearing, are approximate because he did not make a call to dispatch contemporaneous with events happening. Therefore, it was before 3:09 p.m. that the drugs were found.

[3] Hart Circuit Court Case No. 19-CR-00125.

-4-

*Rhoton v. Commonwealth*, 610 S.W.3d 273, 275-76 (Ky. 2020) (footnotes omitted). Here, the controlling facts are not in dispute. We therefore focus our analysis on whether the trial court properly applied the facts to the law.

Love argues the traffic stop was extended beyond the reasonable time necessary for the speeding violation because Deputy Butler lacked reasonable suspicion to extend the stop. We disagree. "Reasonable suspicion is determined by examining the totality of the circumstances. And, when determining whether reasonable suspicion of criminal activity exists, the collective knowledge of all the law enforcement officers involved in the stop may be taken into consideration." *Giles v. Commonwealth*, 620 S.W.3d 204, 208 (Ky. App. 2021) (internal quotation marks and citations omitted). The law on extension of stops in the context of dog sniffs has been ably summarized:

> Police officers may not extend or prolong traffic stops without reasonable, articulable suspicion to conduct further criminal investigation. *Rodriguez v. United States*, 575 U.S. 348, 355, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). Officers who pursue other purposes instead of those associated with the original mission of the stop for any amount of time unconstitutionally prolong the stop. *See Illinois v. Caballes*, 543 U.S. 405, 408, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005). Therefore, a stop is extended when an officer pursues purposes or tasks unrelated to his or her main objective of addressing a traffic violation *and* that new pursuit adds time to the stop. *See Carlisle v. Commonwealth*, 601 S.W.3d 168, 176 (Ky. 2020) (citing *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009)). Steps taken in pursuit of securing the scene and ensuring

-5-

officer safety must still relate back to the purpose of the stop or be pursued simultaneously with diligent work on its original purpose. *Id.*; *Rodriguez*, 575 U.S. at 349, 135 S. Ct. 1609 ("The officer-safety interest . . . stem[s] from the danger to the officer associated with the traffic stop itself."). In short: An officer must stay on-task, and assisting officers running simultaneous investigations must add no time.

There is no *de minimus* or reasonableness exception to this extension rule. Any unwarranted extension – no matter how short – without reasonable, articulable suspicion violates the Fourth Amendment. *Davis*,[4] 484 S.W.3d at 294. A stop may therefore last "no longer than is necessary to effectuate the purpose of the stop," *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983), and even tasks pertaining to that purpose must be diligently pursued. *Lane*, 553 S.W.3d at 206; *see also Rodriguez*, 575 U.S. at 357, 135 S. Ct. 1609.

Attending to a traffic violation and conducting a criminal investigation are two separate purposes. For example, pulling someone over and checking their license and registration are squarely within the objectives of issuing a traffic ticket. *Id.* at 355, 135 S. Ct. 1609. A dog sniff, by contrast, is a criminal investigation unrelated to addressing a traffic violation. *Id.* ("A dog sniff . . . is a measure aimed at detecting evidence of ordinary criminal wrongdoing . . . . Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission."); *Lane*, 553 S.W.3d at 206 ("Obviously, a drug dog sniff search for illegal drugs falls outside the scope of routine traffic law enforcement."); *see also Indianapolis v. Edmond*, 531 U.S. 32, 40-41, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000)

---

[4] *Davis v. Commonwealth*, 484 S.W.3d 288 (Ky. 2016).

(finding that a traffic checkpoint at which dogs walked around cars without individualized suspicion was "ultimately indistinguishable from the general interest in crime control" rather than constitutionally related to a traffic stop).

Dog sniffs are criminal investigations. The dissent claims that dog sniffs are legitimate investigative tools, and that their use does not rise to the level of a constitutionally cognizable infringement. *See Caballes*, 543 U.S. at 409, 125 S. Ct. 834. It is true that in a vacuum, dog sniffs are not violative of the Fourth Amendment, just as, in a vacuum, an encounter with a police officer on the street does not violate the Fourth Amendment. However, that says little about how, in practice, dog sniffs implicate the Fourth Amendment during an otherwise lawful traffic stop.

*Commonwealth v. Clayborne*, 635 S.W.3d 818, 824-25 (Ky. 2021).

In this case, in examining the totality of circumstances, the circuit court found Deputy Butler had reasonable articulable suspicion to extend the traffic stop based on the following:

(1) that police in Barren County were conducting surveillance on a residence of a known drug dealer, (2) that the occupants of the targeted vehicle had stopped at this residence for a short duration and then proceeded to travel into Hart County, (3) that [Detective] Guffy suspected that the vehicle contained drugs, pursued said vehicle, and radioed Hart County for assistance, (4) that Butler recognized that three of the occupants were known drug users, and (5) that Butler found these subjects to be "above and beyond nervous."

Love relies on *Giles* in support of his argument. In *Giles*, the officer stopped a vehicle for an expired license plate after receiving a call from a narcotics

officer that a similar vehicle had recently left a house known for drug activity.

Giles was the passenger in the vehicle. A canine unit was called, and drugs were

found in the vehicle. This Court reversed the trial court's ruling that there was

reasonable suspicion to prolong the stop, holding, in relevant part:

> [t]o have properly relied upon the narcotics detective's radio call, it was incumbent upon the Commonwealth to have introduced evidence setting forth the facts supporting the reasonable suspicion that the house on Locust Avenue was indeed a known drug house. In the absence thereof, we can only conclude that there was not reasonable suspicion of criminal activity to support the narcotics detective's radio call concerning the Altima leaving the known drug house on Locust Avenue. In this respect, the circuit court committed an error of law.
>
> Additionally, the evidence established that Hood did not see the Altima leave the house, the narcotics detective did not provide a license plate number, and the narcotics detective did not supply a description of the individuals in the Altima. A driver's license check revealed that Santana had an active driver's license, and a search for outstanding warrants revealed that neither Santana nor Giles had any outstanding warrants. And, there was no evidence that Giles or Santana had a criminal history. ***While certainly a close call, in the absence of any other evidence being presented at the suppression hearing***, we must conclude that Hood's actions in prolonging the stop for an expired license plate tag to wait for a canine unit were unreasonable and were in violation of Giles' Fourth Amendment right to be free from an unreasonable search and seizure. There was insufficient evidence presented at the hearing to justify prolonging the stop.

*Giles*, 620 S.W.3d at 208-09 (emphasis added).

-8-

Testimony at the suppression hearing in this case revealed that the vehicle in question was under constant surveillance by officers from the time it left the residence under investigation until the time the vehicle was intercepted by Deputy Butler in Hart County. Although the vehicle was stopped for speeding, Deputy Butler testified that, upon contacting the driver and passengers in the vehicle, he recognized three out of the four passengers, including Love, for known narcotics use. Deputy Butler was suspicious because these numerous known users of narcotics were all together in one vehicle and had just left a suspected drug sale location.

The lack of identification from the driver of the vehicle necessitated a further investigation during the stop. Finally, Deputy Butler also testified regarding the behavior of the driver and passengers during the stop. "Although nervousness alone is insufficient to give rise to reasonable suspicion, it is an important factor in the analysis." *Adkins v. Commonwealth*, 96 S.W.3d 779, 788 (Ky. 2003) (citation omitted). Deputy Butler testified that the occupants were "manifesting fear" and were "above and beyond nervous."

The assessment of reasonable articulable suspicion occurs on a continuum and not in a vacuum. It is not a snapshot of a second or even a minute of the entire interaction. When we evaluate evidence and apply reported cases to

the facts, it is tempting to examine one factor in isolation. Most reported vehicle stop cases involve more than one factor and can usually be distinguished factually.

For example, the report of the stop at a suspected drug provider's house in *Giles* as one factor in isolation is like the continued observation of the vehicle in this case. But there the similarity ends. The driver in *Giles* had a valid license; the driver in this case did not. The time needed for the interaction can be affected even by such a difference. The officer had to determine what to do with the developing issue of a driver without a valid license, including who owned the vehicle and who could drive the vehicle away.

Another example is the criminal record of the occupants. In *Giles*, there was no evidence of a criminal record much less any active warrants. The record here reveals Love was on a recently granted probation for trafficking methamphetamine. Such information was available to Butler, although he did not specifically mention it in his testimony. Deputy Butler did testify generally of his knowledge of Love's run-ins with law enforcement relating to domestic issues and drugs.

We and the circuit court must look at all the circumstances. Here, Deputy Butler was an officer involved in an ongoing and uninterrupted surveillance. When a valid reason (speeding) for a traffic stop presented itself, the development of new suspicion continued. The officer saw three people with

known drug use history in a vehicle with someone he did not know, who it turns out did not have a valid driver's license. The occupants were not just nervous; they were beyond that state.

When all the circumstances are considered together, Deputy Butler obtained additional information by observation and investigation supporting reasonable suspicion of criminal activity pertaining to drug use. The extension for the dog sniff was a justified extension. With everything else observed, the alert by the dog supported the required probable cause to search. The evidence obtained was not obtained in violation of Love's constitutional rights to be free from unreasonable search and seizure.

## CONCLUSION

The factual findings of the Hart Circuit Court are supported by the evidence and are not clearly erroneous. The Hart Circuit Court correctly applied the law. The order denying the motion to suppress is AFFIRMED.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky