RENDERED: MAY 6, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1586-MR

COMMONWEALTH OF KENTUCKY                                  APPELLANT

APPEAL FROM MARION CIRCUIT COURT
v.        HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 20-CR-00053

JOSEPH BLAKE BAKER                                          APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

JONES, JUDGE: Pursuant to KRS[1] 22A.020(4), the Commonwealth appeals the

Marion Circuit Court's interlocutory order granting Joseph Blake Baker's motion

to suppress evidence in his criminal case. After careful review of the facts and the

law, we reverse and remand for further proceedings.

---

[1] Kentucky Revised Statutes.

# I. BACKGROUND

At approximately 12:30 a.m. on January 4, 2020, Officer Samuel Knopp of the Lebanon Police Department was on patrol when he observed a vehicle parked in the bay of a carwash. The officer considered the location of the vehicle strange, not only because of the lateness of the hour, but also because it was raining. When Officer Knopp pulled up in his cruiser, the driver exited the vehicle. The driver did not have identification but identified himself as Joseph Blake Baker and provided his social security number. Officer Knopp ran Baker's information through dispatch, and there were no warrants for Baker's arrest.

Nevertheless, Officer Knopp still believed the situation was odd, and that Baker's behavior was suspicious. Specifically, Officer Knopp thought Baker was acting anxious and nervous and that his speech was unusually slow and slurred. Officer Knopp also observed that Baker's eyes were red and bloodshot. When questioned by Officer Knopp, Baker explained away his appearance and behavior as being from tiredness as he had spent the day moving. Baker told Officer Knopp that he was at the carwash to get the mud off of his vehicle. Officer Knopp was not convinced by Baker's explanation because he did not observe any mud on the vehicle and because Baker was not actively washing his vehicle. Officer Knopp asked Baker for permission to search his vehicle, but Baker refused. Since Officer Knopp did not any smell alcohol, he did not a conduct a field

sobriety test.[2] And, despite his suspicions, he saw no immediate cause to prolong his encounter with Baker.

After departing the carwash, Officer Knopp contacted a fellow officer on duty at the time, Officer Christopher Cook, and told him about his encounter with Baker at the carwash. Approximately twenty minutes later, while patrolling through downtown Lebanon, Officer Cook found himself behind what he believed to be Baker's vehicle. He observed the vehicle make a right-hand turn without using a turn signal. Officer Cook called dispatch and had the vehicle's license plate number run through the system. Officer Cook was advised to verify insurance. At this point, Officer Cook initiated a traffic stop of the vehicle, which was in fact being driven by Baker. Officer Knopp and a canine unit officer, Quinton Cardwell, apparently learned that Officer Cook was conducting a traffic stop of Baker through dispatch and began making their way to the scene of the stop.

Officer Cook approached the vehicle and asked to see Baker's driver's license and proof of insurance. Baker had neither, and he once again identified himself using his name and social security number. Officer Cook relayed the information to dispatch and then returned his attention to Baker. Around this time,

---

[2] Officer Knopp was not trained to conduct drug impairment sobriety tests.

Officer Knopp arrived on the scene and again asked Baker for permission to search his vehicle. Baker once again refused.

During his exchange with Baker, Officer Cook noted that Baker had bloodshot eyes and what he described as a "slow pace" of speech. Baker's appearance and behavior suggested to Officer Cook that Baker could be under the influence of drugs.[3] Officer Cook asked Baker to step out of the vehicle and began conducting field sobriety tests. At some point during administration of the field sobriety tests, Officer Cardwell arrived on the scene with a canine unit and performed a sniff search around the exterior of Baker's vehicle while Officer Cook finished up with the field sobriety tests.

The field sobriety tests did not indicate that Baker was intoxicated; however, the dog alerted to the presence of narcotics in Baker's vehicle. The officers then searched the interior of Baker's vehicle. During their search, the officers found a handgun under the driver's seat of the vehicle, a pipe for smoking methamphetamine, a small quantity of methamphetamine, and what were described as marijuana crumbs throughout the vehicle.

---

[3] Unlike Officer Knopp, Officer Cook had undergone training in ARIDE (Advanced Roadside Impaired Driving Enforcement), a sixteen-hour advanced course which deals specifically with drug-impaired driving making him qualified to recognize signs of drug impairment and conduct field assessments to detect drug-impaired drivers. *See Advanced Roadside Impaired Driving Enforcement – Instructor Guide*, NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION (revised Feb. 2008), https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/aride_instructor _guide-tag.pdf (last visited Feb. 10, 2022).

Baker was indicted by a Marion County grand jury on the charges of first-degree possession of a controlled substance (methamphetamine),[4] possession of drug paraphernalia,[5] failure to maintain insurance (first offense),[6] and failure to properly signal.[7] Baker subsequently moved the trial court to suppress evidence seized during the traffic stop, arguing the traffic stop was unlawfully prolonged to conduct a dog sniff contrary to the United States Supreme Court's opinion in *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). (Record (R.) at 38.) In its order on the motion, the trial court agreed with the Commonwealth that Officer Cook had probable cause to stop the vehicle for the observed traffic violation. The trial court also found that Baker's bloodshot eyes and slurred speech gave the officer probable cause to conduct the ARIDE field sobriety tests, and there was no delay in administering these tests. (R. at 68.) Finally, the trial court concluded the canine unit arrived and conducted its sniff search prior to the completion of Officer Cook's field sobriety tests. (R. at 68-69.)

Despite these findings, however, the trial court granted Baker's motion to suppress, citing the Kentucky Supreme Court's decision in *Davis v. Commonwealth*, 484 S.W.3d 288 (Ky. 2016), as well as this Court's opinion in

[4] KRS 218A.1415, a Class D felony punishable by up to three-years' imprisonment.

[5] KRS 218A.500, a Class A misdemeanor.

[6] KRS 304.39-080, punishable as a Class B misdemeanor pursuant to KRS 304.99-060.

[7] KRS 189.380, a traffic violation punishable pursuant to KRS 189.990(1).

*Olmeda v. Commonwealth*, 601 S.W.3d 183 (Ky. App. 2020).  Quoting *Davis*, the trial court stated, "[t]he 'key question' is *not* whether the duration of Appellant's roadside detention was unreasonable; rather, it is whether the sniff search was related to *the purpose* for which Appellant was stopped[.]"  *Davis*, 484 S.W.3d at 294.  The trial court then asserted the facts of this case were virtually identical to those of *Olmeda*, in that a dog sniff search "was conducted in the middle of the second set of field sobriety tests for drug usage" and the search in *Olmeda* was "admissible only because of the inevitable discovery doctrine."  (R. at 70.)  The trial court believed that, had the sniff search been appropriate, this Court would have used that as the basis for the decision and not the inevitable discovery doctrine.  (R. at 70.)  Based on these factors, the trial court granted the suppression motion.  The Commonwealth thereafter exercised its right to appeal interlocutory orders in criminal cases pursuant to KRS 22A.020(4).[8]

## II. Standard of Review

"When reviewing a trial court's ruling on a motion to suppress, the findings of fact are reviewed under a clearly erroneous standard, and the conclusions of law are reviewed *de novo*."  *Commonwealth v. Conner*, 636 S.W.3d

---

[8] The Kentucky Supreme Court has construed this statute to permit an appeal of an interlocutory ruling only if the ruling "decides a matter vital to the Commonwealth's case[.]" *Eaton v. Commonwealth*, 562 S.W.2d 637, 639 (Ky. 1978).  The trial court's ruling in this case meets this standard because without the evidence seized as a result of the dog sniff, the Commonwealth would not be able to support the main charges against Baker.

464, 471 (Ky. 2021) (quoting *Moberly v. Commonwealth*, 551 S.W.3d 26, 29 (Ky. 2018)). "[I]f the court's findings of fact are supported by substantial evidence, we then conduct a *de novo* review of the court's application of the law to the facts." *Id.* (quoting *Turley v. Commonwealth*, 399 S.W.3d 412, 417 (Ky. 2013)).

## III. ANALYSIS

The Fourth Amendment to the United States Constitution, as applied to the states under the Fourteenth Amendment, and Section 10 of the Kentucky Constitution provide safeguards against unreasonable searches and seizures.[9] Fourth Amendment jurisprudence is premised on "the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967) (footnote omitted)).

"A traffic stop is considered a seizure of the driver." *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013). However, a warrant is not required for an officer to make a traffic stop "if [the officer] has probable cause to believe

---

[9] Section 10 of the Kentucky Constitution "provides no greater protection than does the federal Fourth Amendment." *Artis v. Commonwealth*, 360 S.W.3d 771, 774 (Ky. App. 2012) (quoting *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996), *abrogated on other grounds by Kyllo v. United States*, 533 U.S. 27, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001)).

that a traffic violation has occurred." *Id*. Where the officer has witnessed a suspected traffic violation, he may conduct a traffic stop "regardless of his or her subjective motivation in doing so." *Greer v. Commonwealth*, 514 S.W.3d 566, 569 (Ky. App. 2017); *see also Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). This does not mean, however, that the officer is free to detain the subject for any length of time or to search the subject and his vehicle without limitation as part of the traffic stop. During an ordinary traffic stop, an officer's "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Conner*, 636 S.W.3d at 473 (quoting *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020)).

Absent reasonable articulable suspicion that criminal activity is afoot that would justify further investigation, the *prolonging* of a traffic stop, even for a *de minimis* amount of time, solely to accommodate a dog sniff is an illegal seizure. *Id.* at 474; *Davis*, 484 S.W.3d at 294. "That said, officers may pursue unrelated investigative inquiries during a traffic stop if doing so does not add time to the stop. For example, when one officer continues to issue a traffic citation or perform other traffic-stop-related inquiries while another officer simultaneously conducts a dog sniff, the dog sniff is permissible because it does not add time to the stop."

*Conner*, 636 S.W.3d at 474. It is for this reason that "[s]eizures under the Fourth Amendment are analyzed sequentially[.]" *Id.* at 472.

As an initial matter, we do not accept Baker's characterization of the events as a single stop that began with Baker's encounter with Officer Knopp at the carwash. Officer Knopp simply stopped at the carwash and asked Baker a few questions, including why he was there. "A police officer may approach a person, identify himself as a police officer and ask a few questions without implicating the Fourth Amendment." *Baltimore v. Commonwealth*, 119 S.W.3d 532, 537 (Ky. App. 2003). Although Officer Knopp was skeptical of Baker's answers, he did not detain Baker to perform further tests and left the scene, ending the encounter. Officer Knopp next reported this concern to a fellow officer. There was nothing untoward about his decision to do so.

Certainly, it would not have been proper for Officer Cook to simply stop Baker, out of the blue, for no reason when he came upon him later that evening, but this is not what occurred. Officer Cook testified that he observed Baker make a right turn without using a turn signal. In Kentucky, a driver must signal continuously for at least one hundred feet prior to making a turn. *See* KRS 189.380. Regardless of his subjective intent, witnessing Baker commit this traffic violation gave Officer Cook probable cause to stop Baker. *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001) ("Although Detective Royse

-9-

appears to have stopped Wilson to further a drug investigation, his subjective motivation does not invalidate the stop as it was made validly and conducted within the bounds of official propriety.").

As part of the stop, Officer Cook was permitted to collect Cook's identifying information and check his criminal history. *Carlisle v. Commonwealth*, 601 S.W.3d 168, 179 (Ky. 2020). This is what Officer Cook was doing when Officer Knopp arrived on the scene, and nothing indicates that Officer Knopp's presence delayed the traffic stop. Officer Cook testified that while talking with Baker, he observed that Baker's eyes looked bloodshot and that his speech seemed unusually slow. Based on his training and experience, Officer Cook believed Baker's appearance and behavior were indicative of him possibly being impaired by drugs. Officer Cook's observations coupled with Baker's having committed a traffic violation provided Officer Cook with a valid reason to extend the stop to conduct field sobriety tests. *Iraola-Lovaco v. Commonwealth*, 586 S.W.3d 241, 245-46 (Ky. 2019); *Bolin v. Commonwealth*, 592 S.W.3d 305, 314 (Ky. App. 2019).

As noted by the trial court, Officer Cook began administering the field sobriety tests within approximately two minutes of speaking with Baker. This is a reasonable amount of time. Furthermore, since Officer Cook did not actually make a call seeking assistance from the canine unit no argument can be made that

Officer Cook delayed initiating the field sobriety tests for the purpose of securing the canine unit. While Officer Cook was in process of conducting the field sobriety tests, Officer Cardwell arrived on scene with the canine unit and conducted a sniff search of Baker's automobile. Nothing in the record indicates that the canine unit's arrival delayed Officer Cook. In fact, as found by the trial court, the sniff was completed while Officer Cook was still administering the sobriety tests.

Even though the trial court did not find that the traffic stop and ensuing field sobriety tests were delayed by the dog sniff search, it concluded that the sniff was unreasonable because it was unrelated to purpose of either the initial stop or the field sobriety test. The trial court in effect concluded that there has to be probable cause for a police officer to conduct a sniff search of a stopped vehicle irrespective of whether the sniff delays the stop. It was here the trial court erred.

As recently clarified by the Kentucky Supreme in *Connor*, the sniff does not have to be related to the stop so long as it does not delay it. *Conner*, 636 S.W.3d at 474. This is because vehicular dog sniffs do not in and of themselves violate the Fourth Amendment. *Commonwealth v. Clayborne*, 635 S.W.3d 818, 825 (Ky. 2021); *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 838, 160 L. Ed. 2d 842 (2005) ("In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion

on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement."). The problem arises when the seizure of the person (*i.e.*, the stop of the vehicle) is delayed so that the sniff can be performed. The delay may be justified in some cases if the subject does something or the officer sees something during the stop that causes the officer to have a reasonable and articulable suspicion that the subject is harboring drugs in his vehicle. However, in the absence of such intervening circumstances, *prolonging* the traffic stop or seizure of the person for a dog sniff violates the Fourth Amendment.

Thus, "[t]he key question is whether the officer abandoned pursuit of permissible traffic-related inquiries in order to accommodate a dog sniff, thereby adding time to the overall duration of the traffic stop, and whether doing so [delaying the stop] was justified by reasonable, articulable suspicion." *Conner*, 636 S.W.3d at 474. If the answer to the first prong is a negative, the court does not have to consider the second. Only where the sniff delays the stop do we have to then have to consider whether it was justified by reasonable articulable suspicion. *Id.* "[A] dog sniff executed concurrently with diligent traffic-related work d[oes] not unduly prolong the stop, even absent independent justification for the dog sniff." *Clayborne*, 635 S.W.3d at 827 (citing *Caballes*, 543 U.S. at 409, 125 S. Ct. at 838).

In *Davis*, the officer initiated a traffic stop after observing the appellant cross over the centerline. Upon making contact, the officer smelled alcohol and decided to conduct field sobriety tests, which Davis passed. After the field sobriety tests were completed, the officer then had a canine do a sniff of the exterior of Davis's vehicle. The Court first concluded that the sniff delayed the stop by several minutes because purpose of the initial stop and ensuing sobriety test had been concluded before the sniff took place. The Court then determined that the officer had no valid reason to extend the stop to search for contraband, making the delay and search of the vehicle's interior unconstitutional. *Davis*, 484 S.W.3d 294.

Similarly, in *Olmeda*, which the trial court also relied on, the canine search prolonged and/or delayed the original stop. Specifically, the officers discussed the need for the canine search, the officer who conducted the field sobriety tests called for the canine unit to come to scene before beginning to administer the second test, and it took about ten minutes for the canine unit to arrive. *Olmeda*, 601 S.W.3d at 186. Having determined that there was some delay, this Court then considered whether the evidence was nevertheless admissible based on the inevitable discovery rule.[10]

---

[10] Both Baker and the trial court consider the encounter with Officer Knopp and the traffic stop implemented by Officer Cook to be substantially similar to the two sets of field sobriety tests conducted in *Olmeda* – the trial court asserting that, "[i]n essence, the field sobriety tests

-13-

In contrast to *Davis* and *Olmeda*, the stop here was not delayed so that a dog sniff could take place. Officer Cook did not interrupt the stop to request the canine unit; the unit arrived on its own and completed its work while Officer Cook was still in the process of completing the field sobriety tests. Since the sniff did not delay the stop, the sniff did not violate Baker's Fourth Amendment rights. *Clayborne*, 635 S.W.3d at 827; *see also Rodriguez*, 575 U.S. at 349, 135 S. Ct. at 1611 ("The Fourth Amendment may tolerate certain unrelated investigations that do not lengthen the roadside detention[.]"). The lawfully conducted sniff, which resulted in a positive alert to the presence of narcotics, gave the officers probable cause to search the interior of Baker's vehicle. *Caballes*, 543 U.S. at 409, 125 S. Ct. at 838.

## IV. CONCLUSION

For the foregoing reasons, we reverse the Marion Circuit Court's order granting Baker's motion to suppress and remand this matter for further proceedings not inconsistent with this Opinion.

---

conducted by Officer Cook were the second set of tests administered on the evening in question." (R. at 70.) This conclusion is clearly erroneous. Officer Knopp did not detect alcohol and did not administer any tests, knowing that he was not specifically trained to detect drug intoxication. This is not an affirmation of a driver's sobriety. To the contrary, Officer Knopp saw Baker's bloodshot eyes and odd behavior as worthy of concern, and he expressed those concerns to Officer Cook. In any event, the encounter with Officer Knopp did not serve to immunize Baker against Officer Cook's traffic stop, nor did it serve as justification to suppress a concurrent dog sniff search which added no time to the length of Baker's detention. *Clayborne*, 635 S.W.3d at 827.

ALL CONCUR.

BRIEF FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Christina L. Romano
Assistant Attorney General
Frankfort, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE:

Luke R. Lawless
Campbellsville, Kentucky